UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:11-cr-00105-JDR |
| | ) | |
| Plaintiff, | ) | Anchorage, Alaska |
| | ) | Thursday, December 29, 2011 |
| vs. | ) | 2:00 o'clock p.m. |
| | ) | |
| MICHAEL B. CRAWFORD, | ) | **ARRAIGNMENT ON MISDEMEANOR** |
| | ) | **INFORMATION/EVIDENTIARY** |
| Defendant. | ) | **HEARING ON MOTION TO DISMISS** |
| _____ | ) | **[3]** |

**TRANSCRIPT OF PROCEEDINGS**

BEFORE THE HONORABLE JOHN D. ROBERTS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | STEVEN N. SCORDINO, ESQ. |
| | Department of Interior, Regional |
| |   Solicitor's Office |
| | 4230 University Drive, Suite 300 |
| | Anchorage, Alaska   99508 |
| | (907) 271-4131 |
| | |
| For the Defendant: | BRENT R. COLE, ESQ. |
| | Marston & Cole, P.C. |
| | 821 N Street, Suite 208 |
| | Anchorage, Alaska   99501 |
| | (907) 277-8001 |
| | |
| Court Recorder: | NANCY LEALAISALANOA |
| | U.S. District Court |
| | 222 West 7th Avenue, #4 |
| | Anchorage, Alaska   99513 |
| | (907) 677-6111 |

Case 3:11-cr-00105-SLG    Document 22   Filed 01/06/12   Page 1 of 111

Transcription Service:           NODAK ROSE TRANSCRIPTS
                                 721 North 19th Street
                                 Bismarck, North Dakota  58501
                                 (701) 255-1054

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

ANCHORAGE, ALASKA - THURSDAY, DECEMBER 29, 2011

(Call to Order of the Court at 2:00 p.m.)

(All parties present; defendant present telephonically)

THE CLERK: All rise. His Honor the Court, the United States District Court for the District of Alaska is now in session, the Honorable John D. Roberts presiding. Please be seated.

THE COURT: This is a hearing set in Case 3:11-cr-105, U.S. v. Crawford.

THE CLERK: Mr. Crawford's telephonic.

THE COURT: Mr. Crawford, we're in open court now. Can you hear me speaking?

THE DEFENDANT: Yes, sir. I can.

THE COURT: All right. Your attorney is here and the Government attorney is present. The first matter that I'd like to address is an arraignment on the Information which has two counts. Have you received a copy of that document?

THE DEFENDANT: (Indiscernible - telephonic cutout), Your Honor.

THE COURT: First count charges trapping out of season; the second count, violation of terms and conditions of permit. Have you gone over the content of that with your attorney?

THE DEFENDANT: I have, Your Honor.

THE COURT: Do you agree to be arraigned

telephonically without your personal appearance in court?

THE DEFENDANT: Yes, sir.

THE COURT: I'll ask the Government to state the penalty provisions for each of the two counts so we'll have that of record.

MR. SCORDINO: Yes, Your Honor.

THE COURT: You may remain seated. You'll be closer to the microphone.

MR. SCORDINO: Thank you, Your Honor. Your Honor, both counts -- count one, trapping out of season and, count two, violation of the permit -- are Class B misdemeanors. Both carry a penalty of up to six months in jail and -- and/or five thousand dollars in a fine, the max penalty. We are not seeking jail time.

THE COURT: Special assessment?

MR. SCORDINO: Sorry. And special assessment -- I didn't bring that paperwork, but it's twenty-five dollars court assessment and ten dollars for, let me see if I have it.

THE COURT: Special assessment is probably ten dollars.

MR. SCORDINO: Sorry. So, a court assessment of ten dollars and a twenty-five-dollar processing fee, Your Honor.

THE COURT: Thank you. Mr. Crawford, would you like to have the counts read to you before you enter pleas?

THE DEFENDANT: Sure.

THE COURT: All right. Count one charges: "On or about March 1st, 2011, within the District of Alaska, within an Alaska national wildlife refuge in the Mystery Creek Road System within the boundaries of the Kenai National Wildlife Refuge, Game Management Unit 15, the defendant, Michael Byers (ph) Crawford, did attempt to trap wolverine after the wolverine trapping season closed on the last day of February 2011. All of which is in violation of Title 16, United States Code, Section 668dd; 50 Code of Federal Regulations, Section 36.32(c)(1)(i); and 5 Alaska Administrative Code 84.27" -- paren -- "14."

Count two charges an offense on the same date: "On or about March 1st, 2011, within the District of Alaska, in the Mystery Creek Road System within the boundary of the Kenai National Wildlife Refuge, the defendant, Michael Byers Crawford, did not abide by the terms of his National Wildlife Trapping Permit, Permit Number KEN11-T23" -- comma -- "by attempting to trap wolverine out of season in violation of Special Condition Number 1 of his permit, failing to make every effort to prevent the capture of non-target species in violation of Special Condition Number 6 of his permit, and operating the cubby set

after the lynx season closed on February 15, 2011, in violation of Special Condition Specific to Kenai National Wildlife Refuge Number 7 of his permit.

All in violation of Title 16, United States Code, Section 668dd; 50 C.F.R. 26.22(b)."

The Information is dated November 18, 2011.

You're entitled to the same set of rights that we've mentioned earlier, which is a trial by court, the right to be represented by an attorney, the right to avoid incriminating yourself. Anything that you say voluntarily may be used as evidence against you with a few exceptions. I'll be glad to continue the advisement of rights or you may waive the advisement for purposes of the arraignment.

THE DEFENDANT: I understand my rights, Your Honor.

THE COURT: How do you plead as to count one of the Information I just read, guilty or not guilty?

THE DEFENDANT: Not guilty.

THE COURT: Count two, violation of terms and conditions of permit, guilty or not guilty?

THE DEFENDANT: Not guilty.

THE COURT: Not guilty pleas will be entered. Because of this, I will direct that the Case Number as 11-po-30 and 11-po-31 be closed. They're superseded by this Information, so the tickets in those two cases are no longer before the Court.

That brings us to the matter that's been set here today, which is --

MR. SCORDINO: Your Honor?

THE COURT: Yes.

MR. SCORDINO: Before we got to that, as this has changed from having a trial prior to the trapping season to now having a trial during the trapping season, we are asking for a condition of release now. We are asking that as a condition of his release, that he not trap in the Kenai National Wildlife Refuge during and up to the time of the trial.

The Kenai National Wildlife Refuge does not make determinations on withdrawing a permit until after the trial on policy grounds. This would have been decided a month ago, but because of a late filing, we are now in a situation where we have -- or that -- that trial was continued. There's no reason that this man should be allowed to trap in the national wildlife refuge. He has violated two laws and is what we're going to prove, but in the meantime, he should not be trapping in the refuge.

THE COURT: Mr. Cole?

MR. COLE: Well, I think it's a little bit late to be bringing this up, number one. They've had opportunities galore to bring this up. They could have done that at the last bail hearing. They obviously didn't think so --

THE COURT: Well, I think it's timely because we're addressing bail on the Information, so I will not decline to address his request.

MR. COLE: Second, Your Honor, certainly the Government has made allegations. They seem to uniformly forget that they're nothing more than that, and nothing more than allegations. And the purpose of bail and the conditions of bail, again, is to assure the person's appearance and to ensure that he's not a danger to the community generally speaking. Neither of those are implicated.

So, the only other justification is, is this something that is reasonably necessary at this point in the case? I would submit that at this point, it's not reasonably necessary. We are going to have in ten days a trial on this issue and, number two, I'm not sure why they just couldn't go and take away his conditional permit if that's what they wanted to do, but to make it part of this criminal proceeding, we object to it.

THE COURT: Can the Government suspend the -- the use of the permit during the pendency of the case?

MR. SCORDINO: My -- my understanding is it's either revoke or -- or allow the -- the permit. And in this case, this is exactly, you know, the harm that we're trying to avoid. This man has been violating wildlife laws. We do not trust him to be trapping in the Kenai National Wildlife Refuge

and harming the wildlife there, especially when, you know, like here, we're going to argue about does he understand the definition of a cubby trap. He argues that he can't even understand that.

MR. COLE: Judge --

THE COURT: All right. I -- I'm -- I'm --

MR. SCORDINO: So, these are the type of --

THE COURT: I understand the arguments.

MR. SCORDINO: So, this is, you know, that -- that we don't -- this guy in -- of what he has done and, you know, this is the type of harm we're trying to avoid. The balance -- the -- the condition of release is exactly directed to the only harm that we think that -- that he -- you know, we're trying to avoid, a continued problem in the refuge that might harm the wildlife of the refuge.

THE COURT: All right. That -- that's not a purpose of the bail, as counsel has pointed out, for the defendant. Bail serves the two purposes of deterrence -- well, basically, a danger to the community and flight risk.

Analogizing to traffic cases, for example, other Class B misdemeanors that this Court hears, if a person has a moving traffic violation pending, the Court doesn't suspend the driver's license just because of the violation or because he may commit a similar violation in the future. Of course, we have a point system for moving traffic violations.

I'm going to leave it like it is and not impose that as a part of the bail. Now, Mr. Crawford, that does not mean that you can continue in conduct that the Government contends is illegal and might issue another ticket, and you need to seek legal advice before doing something like that. It just simply means it's not going to be litigated as a condition of bail at this stage. If I have aggravating circumstances or other facts that might persuade the Court differently, then bail is something that can come up at any time; it's not a one-time shot.

So, the Government can, as long as it's a pretrial situation, perhaps even during trial, ask that the conditions of bail be modified. But I'll deny the Government's request at this time as it's presented. So, that's the bail issue.

I think we're on track for the trial, and the Government's provided discovery. I will ask the question, is there any additional discovery that the Government has to produce voluntarily as a result of the Information? Are these the same charges that were previously brought?

MR. SCORDINO: These are the same charges. We just received a -- a discovery request today on expert testimony. I haven't gone back to look at what the dates are on our -- when discovery was closed, but we will respond to this if discovery hasn't closed.

THE COURT: All right. Well, I suggest you --

probably be best to respond to it, but I'll --

MR. SCORDINO: Okay.

THE COURT: -- leave it to you as to how you respond. Anything else preliminarily before we address the motion to dismiss? All right.

The motion to dismiss brought by the defendant was carried over to the case before the Court now as Docket 3, and there are perhaps two parts to it. First, the defendant did not violate the terms of the special use permit as alleged in the first charge. That raises factual issues that are generally not addressed in a motion to dismiss. There's no summary judgment available in a criminal case. So, it seems to me that -- that that's not something that would cause the Court to dismiss the case outright because I have to hear the evidence as fact-finder to make that decision whether there was a violation or not.

The second ground in the motion to dismiss is that there's no legal definition of a cubby set, and it is a term of varied definition subject to arbitrary and capricious enforcement. So, that's really the issue set here today.

Now, in setting this down for hearing, I allowed it to be filed as an evidentiary hearing in case there's evidence to present on the issue, so that no party would be surprised instead of just calling it argument. Certainly, I will hear you in your arguments on the motion, but I'll open it up to

see if there's going to be any evidence presented.  So, it's Mr. Crawford's motion, so you get to go first if you have evidence that you want to present on the motion.

MR. COLE:  No.

THE COURT:  Does the Government have any evidence to present on the motion to dismiss ground that I just indicated?

MR. SCORDINO:  Yes, Your Honor.  We will present evidence on the claim that it's -- you know, that the term is vague or not defined.  We'll present evidence of what trappers -- the general definition trappers use for the terms flag set and cubby set.

THE COURT:  Call your first witness.

MR. SCORDINO:  Thank you, Your Honor.

MR. COLE:  Your Honor?

THE COURT:  Yes, sir?

MR. COLE:  Could I make an application?  I know this isn't normal, but since my client is not available and is participating telephonically, I was wondering if I could allow -- if you, the Court, would allow me to turn on my phone and that way I will put it on silence so it won't make any noise, but he then can send me e-mails on questions that he could have for me to ask in the course of the presentation of the evidence?

THE COURT:  Any objection by the Government?

MR. SCORDINO:  No, Your Honor.

THE COURT: Request is granted.

MR. COLE: Thank you, Your Honor. There will -- there will be just a sort bleep when it starts --

THE COURT: That's fine.

MR. COLE: -- and then it will be silent.

MR. SCORDINO: I call Officer Gary Titus to the stand.

(Pause)

THE CLERK: If you could stand by the witness stand -- box over there. Please raise your right hand.

**GARY JOE TITUS, GOVERNMENT'S WITNESS, SWORN**

THE CLERK: Thank you. Please have a seat. And for the record, please state and spell your full name.

THE WITNESS: Gary Joe Titus, T-I-T-U-S.

THE COURT: You want an address? Does the Clerk want to ask him for his address?

THE CLERK: Oh, could you please state your address, sir?

THE WITNESS: Post Office Box 513, Sterling, Alaska, 99672.

THE COURT: Before we start the questioning, Mr. Crawford, this is the Court speaking, if you don't hear for some reason, then let us know and we'll have the question repeated or make sure that you can hear. Also, I will allow a reasonable request to talk to your attorney in private, as

long as it doesn't unduly interfere with the progress of the proceeding. But if you do want to talk to your attorney, make that request and we'll address that. Government --

THE DEFENDANT: Okay.

THE COURT: Government may proceed.

THE DEFENDANT: Got it. When -- when both attorneys are speaking and when Mr. Titus just spoke, if -- if they could just talk a little bit louder, it would really help me. I -- I could hear them, but it's -- it's real faint.

THE COURT: Yes.

THE DEFENDANT: I can hear you just fine.

THE COURT: All right. I'll ask everyone to speak a little bit louder than usual because of the telephone. The Government may inquire of its witness.

MR. SCORDINO: Are we good on the cell phone?

MR. COLE: Yeah.

MR. SCORDINO: Okay.

MR. COLE: Thank you.

**DIRECT EXAMINATION**

BY MR. SCORDINO:

Q    So, Officer Titus, could you please tell us what your position is?

A    I'm a Refuge Officer with the Kenai National Wildlife Refuge.

Q    How long have you been doing that?

A    Since 2000.

Q    And in that role, what -- what do you do?

A    I patrol the Kenai National Wildlife Refuge, enforcing the fish and game and wildlife refuge regulations.

Q    Could you describe to me the -- the permitting process for -- for trapping in the Kenai National Wildlife Refuge?

A    Yes.  To trap on the Kenai National Wildlife Refuge, you need to attend an orientation class.  It's a one-time attendance class only.  It's a -- it's a three-and-a-half sometimes four-hour class given once or twice a -- each year during the fall.  It covers -- the first forty-five minutes is a law enforcement officer talking about the permitting process.  He reads the permit item by item and with discussion on each item.  So, he goes through the entire permit.

Then we have a U.S. Fish and Wildlife biologist talk about the fur bearers on the refuge, the habitat, and how they're doing.  And then we have a short half an hour person come in and talk about ethics.  And then the last hour or so we have a trapper from the community come in and he talks about three items.  He talks about trap preparation, types of traps, and then type of trap sets specific for Kenai wildlife fur bearers.

MR. SCORDINO:  Your Honor, permission to approach the witness?

THE COURT:  Yes.

BY MR. SCORDINO:

Q    I have just handed you what's identified as Exhibit 1. Could you describe that document?

A    Yes.  This is a --

MR. COLE:  Your Honor, before -- before he goes on --

MR. SCORDINO:  Oh, I'm sorry.  I didn't show --

MR. COLE:  -- I don't have a copy of that, so --

MR. SCORDINO:  It was --

MR. COLE:  -- what -- what are we referring to?

MR. SCORDINO:  Oh, I'm --

THE COURT:  You're entitled to have a copy or certainly to see a copy.

MR. SCORDINO:  Okay.  I'm sorry.  This is the -- what we're presenting, and that was presented to you.  That's K.

MR. COLE:  I just need to know what it is.  Okay.  I did get a copy of this.  That's all I needed to know, Your Honor.

THE COURT:  Does the Government need my copy back?

MR. SCORDINO:  No.

THE COURT:  All right.  Mr. Cole, if you need to see a copy, then let us know.

MR. COLE:  I -- I have it here.  I'll just -- I'll get to it.

MR. SCORDINO:  Okay.

MR. COLE:  Thank you.

BY MR. SCORDINO:

Q    Mr. Titus, could you describe to me the document you have identified as Exhibit 1?

A    It's a Special Use Application and Permit.  In this regard, it's for trapping on the Kenai National Wildlife Refuge, and this is Mike Crawford's permit to trap.

Q    And what year is that for?

A    It's 2010.

Q    Is that the year that we're -- the year that the violation occurred?

A    Yes, it was.

Q    Okay.  And you said before you get the permit, you go through a class, is that correct?

A    Yes, we do.  They go through a three-and-a-half sometimes four-hour class.

MR. SCORDINO:  Okay.  This is also in your notebook that we gave you.

MR. COLE:  Which one is this?  Is this just in the back?

MR. SCORDINO:  I think it's under "M" and it's near the back of "M" if I remember right.  It's right there.

BY MR. SCORDINO:

Q    Before I get to this, turning back to what's been marked

as Exhibit 1, is this a fair and accurate representation of --
of Mike Crawford's permit?

A     Yes, it is.

          MR. SCORDINO:  Your Honor, I move to admit Exhibit
1.

          THE COURT:  For purposes of this hearing, any
objection?

          MR. COLE:  No.

          THE COURT:  Admitted.

     (Government's Exhibit 1 admitted)

BY MR. SCORDINO:

Q     All right.  Now, let's turn to what I handed you as --
marked as Exhibit 2.  Now, on -- you were describing a --
could you describe what this document is?

A     This is a -- a -- a picture taken from a Power Point the
law enforcement officer that helps with the program gives when
he reads the permit and each condition on the permit.  This
comes up when it comes to the Special Conditions Specific to
the Kenai National Wildlife Refuge, Number 7.  Cubby and flag
sets are not allowed when the lynx season is closed, and it
shows a cubby set and -- with what I just said on there.  And
the one --

Q     Okay.

A     Yes.

Q     Is this a fair and accurate representation of what's used

at the hearing --

A    Yes, it is.

Q    -- at the -- the training?

A    Yes, it is.

MR. SCORDINO:  Your Honor, I move to admit Exhibit 2.

MR. COLE:  I object.  I mean, it -- it's a lack of foundation.  This talks about cubby sets may not be used from January 1st through January 31st in 2009.  There's been no showing that this is even accurate for the year in question, number one.

THE COURT:  Does the Government want to address the foundation question?

MR. SCORDINO:  May I address the witness?

THE COURT:  Yes.

MR. SCORDINO:  Thank you, Your Honor.

BY MR. SCORDINO:

Q    Do you know which class this came from?

A    Yes, I do.  We show this every year.  I was not -- I did not have access -- this Power Point's changed every year according to the year it is and the changes that might have been made.  I did not have access when this was -- discovery was brought forward.  I had the 2009 class of Power Point before they made the changes.

Q    Okay.

A    And it's for the 2009-10 season.

Q    And is this the type of docu -- is this the type of thing presented in the trainings that people receive before their permit?

A    Yes.  This is given during the orientation class.

MR. SCORDINO:  I move to admit Exhibit 2.

MR. COLE:  Again, I object on the grounds of relevance.  There's been no showing that this was a part of the 2010 orientation.  They say representation, but they don't say that this is actually shown at the one which is the one in question.

THE COURT:  I agree with the objection that you need to have a better foundation to show that it relates to the year in question.

MR. SCORDINO:  The year -- Your Honor, the -- the point of this hearing is to show that the term cubby set is not -- is a generally used term, is a term that all trappers would know.  This is a part of a training and it's a part of -- as the officer has indicated, a part of trainings that go on every year.  And --

THE COURT:  So, you're not offering this to show that the defendant --

MR. SCORDINO:  No --

THE COURT:  -- saw this type of document?

MR. SCORDINO:  No, it's just on what a cubby set is,

Your Honor, and what -- what is presented to people when they get a permit.

THE COURT:  Anything else on the objection?

MR. COLE:  From me or him?

THE COURT:  From you.

MR. COLE:  Well, Judge, then what is the relevance of it?  I mean, to just say that at some point in the -- in the -- in the past somebody has gotten something like this, does not go to the issue at hand, which is in 2010 when we are -- the point in question was there a reasonable definition of what constituted a cubby set and were people provided the notice, this does not go to that fact and so, therefore, again, I object on the grounds of relevance.

THE COURT:  Officer Titus, have you attended any of these orientation classes?

THE WITNESS:  Yes, Your Honor.  I'm actually the person in charge of it up until this year.  I put on the trapper orientation classes, and this is what we use every year with just some minor changes that we have to make every year.

THE COURT:  When you're talking about changes, are you talking about the time frame for which it addresses?

THE WITNESS:  Yes, Your Honor.  I'm -- you're right. I'm talking just the dates we change -- just the dates are the only thing we change on this slide itself.

THE COURT: How long has this type of document been used in the Power Point? Because it has an illustration here, for example.

THE WITNESS: It does. This has been used for -- I've been the lead instructor for this class for the last several years. To give you the specific years is hard to -- for me to remember, but the last several years.

THE COURT: All right. It's being offered for the general purpose of what the orientation class covers, and we're talking about the arbitrariness of the language in the permit and whether it's vague, et cetera. I'll admit it for purposes of this hearing. It's not offered to show that the defendant was exposed to this particular document here so far. So, admitted for a limited purpose.

(Government's Exhibit 2 admitted)

BY MR. SCORDINO:

Q    All right. So, this is the definition -- Exhibit 2, is this -- does this show the definition that the Kenai Refuge uses for cubby sets?

A    It's a -- it's a photo of a cubby set, correct.

MR. SCORDINO: Okay.

MR. COLE: Objection. Non-responsive.

THE COURT: Ask your question again, or you can move on to another question and I'll --

MR. SCORDINO: Okay.

THE COURT:  -- strike the answer.

BY MR. SCORDINO:

Q    All right.  What does this -- what is -- I'm moving on. What does Exhibit 2 depict?

A    It -- it shows a cubby set.  It's -- this one in the photograph shows it made out of natural materials.  It's a constructed cubby with -- with leg-hold or they're called foot-hold traps also now, at the entrance to the tunnel.

Q    So -- okay.  I kind of jaunt ahead of ourselves here. What -- what is a cubby set?

A    A cubby set --

MR. COLE:  Objection.  Lack of foundation.

MR. SCORDINO:  There's --

THE COURT:  He's the refuge officer who is involved in this process.  I guess he can give his understanding of what one is.

MR. SCORDINO:  He's also the law enforcement officer.

THE COURT:  You may answer.

A    A cubby set is a -- it's either natural or constructed. It's usually a hole or tunnel shape with one entrance in and a trap, a Conibear, or even a snare.  It can be set at the entrance to this tunnel, and sometimes at the back is either scent or a piece of bait.  And they're shaped in a -- almost a "V" shape, but it can be any shape, just a covered area that

forms a type of tunnel. And the important part is that the entrance of this is a -- is a set; some type of trap.

BY MR. SCORDINO:

Q   Okay. And if a -- if a trapper was to want to, you know, learn more about cubby sets, where would he go?

A   Well, I think the same way I learned. I -- I picked up every book I could and reading about sets because I wanted to be a successful trapper, so to be successful, I want to read everything I could could pick my hands up; that's trapper magazines, trapper handbooks, trap -- there's so many books on the market now. I have quite the collection myself and I read everything I can, and it all mentions cubby sets as one form of trapping.

Q   Okay. I understand you brought books today of the type that you usually -- you would usually reference. What -- what did you bring?

A   Yes. I brought two books. One is the "Alaska Trapper's Handbook" put out by the Alaska Trappers Association. The other one is "Alaska Trapping" by Dean Wilson. He's -- all trappers know Dean Wilson. He's kind of the person we all look up to as a long-time trapper; a very professional trapper who's since passed away.

        MR. SCORDINO:  It's Exhibit 3.

BY MR. SCORDINO:

Q   So, I'm handing -- I've handed you an exhibit marked for

identification as Exhibit 3, as excerpts of a larger book of the "Alaska Trapper's Manual." Could you describe what -- what Exhibit 3 is?

A     Exhibit 3 is "Alaska Trapper's Manual" created in joint effort by the Alaska Trappers Association and the Department of Alaska Fish and Game. And it's a handbook for -- from the beginner trapper to the advanced trapper.

Q     Is this the type of book a trapper would rely on to -- to learn terms like cubby set?

A     Yes, it is. It's one of the books I have in my personal library and that I've read myself and used the sets out of it myself.

            MR. SCORDINO: I move to admit Exhibit 3.

            MR. COLE: I guess my objection is that this only is a portion of Exhibit 3 and does not constitute the whole trapper's manual and, therefore, it does not accurately represent the manual itself.

            THE COURT: Is there a copy of the manual here?

            MR. SCORDINO: We have a copy of the manual here, Your Honor.

            THE COURT: I think the Government is entitled to offer certain pages of it and the defendant can supplement with additional pages. So, apparently the manual is here if you want to look at it and see whether you have other pages to offer. But the piecemeal part of it I think is not a basis

for objecting to it, so I'll admit Exhibit 3.

    (Government's Exhibit 3 admitted)

BY MR. SCORDINO:

Q    All right.  Could you turn through Exhibit 3 and tell me -- tell me about the different traps in this.  The first -- what -- what is on the -- after you've -- on the second page of the document?

A    On page sixty, it's a -- it's titled "The Baited Snare Set: Lynx," and it shows, as it says -- I'll just read what it says.  It says:

        "Cubbies with two snares and two entrances allow the lynx to see through the cubby and are often most effective.  Snare cubbies need depth so that the snare has a chance to work by drawing tight."

Q    Okay.  Where -- where did you read that from?

A    I read that from page sixty, just underneath "Baited Snare Set: Lynx."

Q    Was that the third -- the third line down where you started reading?

A    Yes, it is.

Q    Okay.  So, is this a cubby set that the diagram depicts?

A    Yes.  I should have started from the beginning.  I'm sorry:

        "Snares are very effective for lynx even at a cubby. Build a cubby on the downwind side of a tree using

two to three-foot long dead sticks of willow or spruce."

Q    Okay.  So, this is one type of cubby that someone could use?

A    Yes, this shows one type of cubby.

Q    Okay.  Could you turn to the next page?  And what is this type?

A    This is page sixty-one, "Conibear-Style Cubby Set: Lynx, Marten, or Wolverine."

Q    Okay.  And what -- what is depicted in the diagram?

A    It's another type of cubby -- explanation of --

"Cubby sets are used to catch a variety of fur bearers.  The main idea behind a cubby is to make a structure that will guide the animal into an area where you have placed bait and lure."

Would you like me to read more or --

Q    You can read the next -- please read the next couple of line -- next couple of sentences.

A    "The cubby provides" -- "The cubby provides cover" --

MR. COLE:  Judge, I just -- I'm going to object.  Is there a reason why we're reading this into the record?  I mean --

THE COURT:  Well, perhaps it lets the defendant know what's on that page since he can't see it.

MR. COLE:  He -- he's familiar with this.

THE COURT:  Well, I can certainly read for myself. Unless you want to highlight something, you don't need to have it read.

MR. SCORDINO:  All right.

BY MR. SCORDINO:

Q    The -- the definition they use here of the main idea behind a cubby is to make a structure that will guide the animals into an area.  Is that the same as the -- the definition the park uses -- or the refuge uses?

A    Yes.

MR. COLE:  Objection.  Lack of foundation and misleading.  There is no definition here.  It doesn't say a cubby is defined as, and the Government's putting words that aren't in existence.

THE COURT:  All right.  I'm going to sustain the objection, so start over again if you want to pursue that line of questions.

BY MR. SCORDINO:

Q    What is the definition the park uses -- or the refuge uses for cubby sets?

A    We use the definition that's in all the trapping books, trapping magazines.  That's the definition, a very commonly used term among trappers.  It's very well known.  I can't think of some -- any trappers not knowing what a cubby is

myself, my personal opinion. I started out not having any knowledge of trapping and cubbies were very familiar to me once I read books.

MR. COLE: Objection. Move to strike. Again, it's non-responsive. He asked him what the definition was and he didn't give that answer.

THE COURT: Well, I'll allow the answer to stand and -- and you can certainly follow up with cross-examination if you want. I'm aware of how responsive or not the answer was, and I certainly would be interested to know where the definition is found, but I'm sure counsel will cover that; somebody will.

BY MR. SCORDINO:

Q   Please give us a little more about what it means for it to be a cubby. What -- what -- what defines something as a cubby versus a different type of trap?

A   How we define a cubby is a natural or constructed tunnel shape with one entrance with a trap -- some type of trap set, set at the entrance.

Q   Okay. You want to -- you want to show us how this looks? You want to do -- demonstrate how a -- what a -- what a cubby looks like?

A   Yes, I could.

MR. COLE: My objection then is relevance and foundation.

MR. SCORDINO: Your Honor, I don't understand. The relevance is -- is it makes it more likely than not that this is the definition of a cubby; that's relevance. The fact of foundation is he said he's a law officer who's working on enforcing the law that says this is a -- in fact these are cubbies. If he doesn't know what it is, no one does. So, I -- that's my response to the objection.

THE COURT: Well, I'm not so sure how relevant it is that -- the way he makes a cubby. We're talking about a definition in a permit -- a special use permit.

MR. SCORDINO: Right.

THE COURT: And unless he's demonstrated that in his class or for the defendant or something like that, how he makes one -- because he's already said there are different ways to do it; there's natural and constructed. I'm not sure how he makes it to                                        is that relevant. You have pictures of cubbies here and there's several different pictures, so there are different ways to do it.

MR. SCORDINO: Okay.

BY MR. SCORDINO:

Q    Okay. In your experience as an officer, going through -- checking -- checking on regulations, have you seen cubby sets as you've been out?

A    Yes, I have.

Q    What do they generally look like?

A    They do vary in shape and construction, but they almost always have one entrance with a -- some type of trap set at the entrance of it which leads the -- and bait or scent placed in the back of the entrance or back of the tunnel shape, which leads the animal through the entrance where the trap is set.

Q    Do you ever have a trap that has a hole at the front and goes into a hole -- has an opening at the front and goes into a hole with the trap at the front that's not a cubby?

A    No.  That would be a natural cubby --

Q    Okay.

A    -- because there's still a set -- a trap set at the entrance and the scent or the bait placed at the back would lead the animal toward the bait.

Q    Okay.  And is this the type of information that you -- you would learn from -- from this book, "The Alaska Trapper's Manual"?

A    Yes, it is.

Q    Okay.  And what is a flag set?

A    A flag set is -- it can be any type of attractant; a piece of flagging, a CD disk they're using now, something to attract an animal, a lynx, to a set.  And below that flag or CD will be some type of foot-hold or leg-hold trap.  The animal -- they'll come watching the flag or the attractant, and -- and step in the trap underneath the flag.

Q    Okay.  And with cubby sets and flag sets, why are they prohibited outside of lynx season?

A    It's to -- the unintentional trapping of lynx.

Q    Okay.  In looking at the language of the permit, if you could look at Exhibit 1 -- first, let's -- let's -- let's specify we're looking at Special Condition 7 of Exhibit 1. And what is Special Condition 7?

A         "Cubby and flag" -- "Cubby and flag sets are not allowed when the lynx season is closed."

Q    Okay. Why are cubbies -- and what about cubby sets?  Why -- why would they not be allowed?

A    Cubby sets are generally almost always used to trap lynx, and when lynx season is closed, a non-target species such as a lynx will be attracted to that cubby.

Q    Do you use cubbies for any other type of animals?

A    Wolverine is about the only other one I can think of.

Q    And will a lynx -- in your experience as a trapper -- how -- how much experience do you have as a trapper?

A    I've been trapping off and on since about 1979 in Alaska.

Q    And in your experience as a trapper and as a refuge officer, are cubby sets on their own used to capture lynx?

A    Yes.

Q    Are flag sets on their own used to capture lynx?

A    Yes.

Q    Do people ever use them together?

A    They can be used in a combination, yes.

Q    What else should the Court know for --

        MR. COLE:  Objection.

BY MR. SCORDINO:

Q    -- definition of the word cubby -- cubby sets?

        THE COURT:  All right.  Sustain the objection.  You need to be more specific.

BY MR. SCORDINO:

Q    If you were describing a cubby set to a new trapper, is there anything else you would describe to him?

A    I would describe it as I have been and I would suggest the new trapper to read as many books, magazines he could to learn about sets.

        MR. SCORDINO:  Okay.  I have no further questions.

        THE COURT:  Cross-examination?

                    **CROSS-EXAMINATION**

BY MR. COLE:

Q    Mr. Titus, let me ask you a couple of questions about your background first.  When did you come to Alaska?

A    1977.

Q    Where did you come from?

A    Nebraska.

Q    Did you trap in Nebraska before you came here?

A    Very limited.

Q    And when you came here, did you move to Kenai or have you

always lived in the Soldotna area?

A    I've lived in many places in Alaska.

Q    Okay.  And your testimony is that you began trapping in 1979, is that correct?

A    I assisted a person trapping at that time.  I was learning to trap up here, and I would just follow that person to learn how to trap.

Q    So, you didn't actually trap that year.

A    Actually set traps myself, no.

Q    Okay.  And who was that person?

A    You know, I don't remember the name of the person.  It's been a lot of people, a lot of years past.

Q    So, you don't remember the name of the person who you first started trapping with?

A    No, I don't.

Q    Okay.  And --

A    He was a --

Q    -- where was that?

A    It was over in Cordova, Alaska.

Q    And what were you trapping?

A    Over there was mostly water animals; mink, otter, some beaver.

Q    And how long did you trap in Cordova?

A    It would just be one year that I tagged along a trap line.

Q    Okay.  So, the next year in 1980, where did you trap?

A    1980, I was over on the Kenai Peninsula, out at Seward.

Q    And were you trapping there?

A    I trapped off and on.  To give you specific years, I trapped off and on depending on how the job allowed me to have time to trap.

Q    And what did you trap when you were in Seward?

A    When I trapped in Seward, I was -- also had a place over in Kasilof.  I would trap otter, beaver, wolves, coyote, and lynx when they were open.

Q    And what did you use to trap those?

A    I used Conibears, leg-holds, and snares.

Q    And how long did you trap there?

A    Off and on since 1979 -- 1980, 1979.

Q    So, the entire Seward -- since Seward, you've been trapping all these years?

A    Yes.  The last about ten years, I have not trapped, but I do help people trap.

Q    The last ten years you haven't trapped?

A    No, I have not, due to an injury.

Q    Do -- when did you begin working for the refuge?

A    In 2000.

Q    So, would it be fair to say that in -- well, in the first year that you began, did you trap in the refuge?  2000?

A    I believe so, yes.

Q    And -- and would there be -- when you trap, you have to

go get a trapping license, right?

A    Yes, I do.

Q    Just like everybody else.  And do you have to turn in

statistics at all of your success?

A    Yes, to the Kenai National Wildlife Refuge.

Q    That's if you trap in the refuge, but do you have to --

are there any State reporting requirements?

A    No, there is not.

Q    On any animals?

A    No, there is not.

Q    So, you don't get any of them sealed or anything like

that?

A    You do get certain animals sealed; your beaver, otter,

yes.

Q    So, that is a way that there would be a record of

somebody's success for a certain fur-bearing animal, right?

A    Yes.

Q    And does the refuge keep track of the animals that are

trapped within the refuge?

A    Yes, they do.

Q    And do they keep track of the location of where those

animals are taken?

A    The -- we do our best to do that.  It's up to the trapper

to mark on the map where they trapped or a written

description.

MR. SCORDINO:  Objection, Your Honor.  The relevance of this line of questioning has nothing to do with cubby or flag sets.

THE COURT:  Mr. Cole?

MR. COLE:  This is going to be to the issue of what was the -- animal was being targeted at -- at the time, and the definition of cubby that's coming up.

MR. SCORDINO:  The def -- what's targeted doesn't go to the definition of cubby.

THE COURT:  Well, definition of cubby is certainly something that's relevant to this hearing.  The animal being targeted is -- is not that I can see, unless there's a better foundation.  That might be a trial issue, but so far I don't see it as part of the motion to dismiss.

MR. COLE:  I was going to ask one more question, but it -- that's --

THE COURT:  You can certainly ask it and we'll see if there's an objection if you want to.

BY MR. COLE:

Q    Do people have access to those numbers and figures of where -- does the public have access to those numbers --

MR. SCORDINO:  I object.  Relevance.

THE COURT:  Well, let me just hear the question first.

BY MR. SCORDINO:

Q    Do -- does the public have access to those collected numbers of who's been successful and where they've been successful in trapping within the refuge?

THE COURT:  All right.

MR. SCORDINO:  I object on relevance.

THE COURT:  And why is that a relevant question?

MR. COLE:  If you want to deny it, go ahead.  I'll move on.

THE COURT:  I shall.

MR. COLE:  Okay.

BY MR. COLE:

Q    So, you haven't trapped in ten years, right?

MR. SCORDINO:  I object on relevance again.

MR. COLE:  They have offered him as an expert or a seeming expert about what the definition of trapping -- of -- of a cubby set is.  I ought to be able to inquire as to his background and his experience as a person who's giving his opinion.

MR. SCORDINO:  Your Honor, he's also a law enforcement officer with community care (indiscernible - simultaneous speakers).

MR. COLE:  Being a law enforcement officer does not provide you with a --

THE COURT:  I'll permit the cross-examination

question.

BY MR. COLE:

Q    Have you not -- have you trapped in the last ten years?

A    No, I have not.

Q    Have you even gotten a trapping license in the last ten years?

A    No, I have not.

Q    Have you helped people trap?

A    When I can, yes, I have.  Younger people.

Q    Do you go out and help them set their traps?

A    I do not.  Without a trapping license, I cannot.

Q    Did you use cubby sets when you were trapping?

A    Yes, I did.

Q    And did you use flag sets when you were trapping?

A    No, I did not.

Q    So, you've never used a flag set in the twenty or so years that you were trapping.

A    No, I just used cubby sets.

Q    And did you use Conibears or did you use leg traps or did you use snares when you made cubby sets?

A    With my cubby sets, I used leg-hold traps.

Q    So, you never used Conibears and you never used leg traps when you were doing that.

A    And Conibear -- in cubby sets, no.

Q    So, is there a place where I can go that says the

definition of a cubby set is X?  Can you show me a

publication, a periodical, a magazine where that is set forth?

A    In these trapper magazines we have here and trapper

manuals, the trapping books, yes.

Q    Point one out to me.

A    For a definition of a cubby --

Q    Where it says the definition of a cubby set is this.

A    Oh, I think each one of the three I read -- read before.

I can read those again, but I think they each define the

cubby.  I'd be glad to read them again if that's -- I'm a

little bit confused what he wants.

Q    I'm asking you for something that says the definition of

a cubby set is this.  Can you show me somewhere in any of

these publications where there's a sentence like that?

A    Each one of these three, and the trapper's manual

describes building a cubby.

Q    Well, let's turn to page sixty-one.  Page sixty.  Let's

start at the beginning.

A    Okay.

Q    Now, this is "The Alaska Trapper's Manual," right?

A    Yes.

Q    And this is what trappers use across the state.

A    One of many books, yes.

Q    Where does it tell you on page sixty what the definition

of a cubby is?

A    It describes how to build a cubby and it shows a very good photo of a cubby.

Q    It -- it shows a diagram of something that it says is a cubby?  Is that -- is that your testimony here today?

A    With their words, yes.

Q    And this diagram has a tunnel, right?

A    Yes.

Q    Is a tunnel necessary for a cubby?

A    Yes, and in some form.  It depends -- it can be so long or shorter, it's just to lead a animal into one entrance.

Q    Why do you need something over the top of it to lead it into the entrance?

A    So, they will not go through some other -- the top or the sides or behind where the trap is set to --

Q    So, it has to have a tunnel-like shape in order to meet your definition of a cubby.

A    Has to have one entrance.

Q    Well, that's different than having a tunnel.  Is it one entrance that makes it a cubby or is it a tunnel that makes it a cubby?

A    Well, I think they're a combination of the two.  One entrance can be into a tunnel, it can fan out into any shape. It's one entrance.

Q    One entrance to the area where the bait is?

A    Yes.

Case 3:11-cr-00105-SLG    Document 22    Filed 01/06/12    Page 41 of 111

Q    And you have to have bait in it?  That's a common element of a cubby?

A    Bait or some type of scent, yes.

Q    And there has to be some type of trap somewhere along the -- the -- somewhere in the path of the cubby?

A    At the entrance, yes.

Q    It has to be at the entrance.

A    That's the -- yes, that's a --

Q    To be a -- to meet the definition of a cubby, it has to be at the entrance, eh?

A    It can be just a few inches in, yes, someplace near the entrance.

Q    And does it make any difference whether it -- the type of trap that is used?

A    No, it does not.

Q    So, that has no impact on whether it's a cubby or not.

A    No.

Q    Does there have to be anything in front of the trap to make the animal step properly?

A    Some people use guide sticks, but not all people use one.

Q    Does that -- is that a condition or a requirement of a cubby to have guide sticks at all?

A    I don't believe so, no.

Q    So, let's go to number -- page sixty.  Sixty-one, I guess.  What is it that makes this a cubby?

A    It's -- it's basically the same.  It's -- as they say, the -- it provides cover for the trap and bait as well.

Q    I don't see how this has a tunnel in it.

A    It -- well, it -- it -- for me, I can see the tunnel in it.  Its entrance -- at the entrance -- one-way entrance is set a Conibear and it leads to the back, and as I said earlier, a tunnel can be short, it can be long, this looks -- appears to be a short tunnel, but it will still lead the animal to the back.

Q    So, is there a length of this tunnel that has to be there?

A    No, there is not.

Q    So, it could be six inches.

A    It could be, yes.

Q    And -- and that would be a cubby.

A    Yes.

Q    Now number three, it's page sixty-two.  Does this have a tunnel in it?

A    Yes, it does.  Even says at the back of the cubby, place the bait or lure.

Q    And in these, I see guide sticks.  Does that mean that you have to have guide sticks in order to have a cubby?

A    I don't believe so, no.

Q    Now, in exhibits -- on sixty-one and sixty-two, there are flags that go with that, right?  There's an attractor flag set

-- they call them attractors, but those are flag sets, right?

A    I do not see one on page sixty, no.

Q    I was saying sixty-one and sixty-two.

A    Excuse me.  Yes, I do see attractors, yes.

Q    And then you've included at page 68 another cubby set, right?

A    Yes -- yes, sir.

Q    And this has a tunnel in it?

A    It appears to have one, yes.

Q    There's no guide sticks here?

A    I do not see any guide sticks.

Q    Okay.  So, what we have here is four different types of cubby sets, is -- is that your testimony?

A    They're all very similar with one entrance.

Q    My question is do we have four different types of cubby sets in these four diagrams?

A    I will re -- no, they're all very similar.

Q    They're all the same.

A    Each one can't -- I want to say they're very similar, yes.  The same, no.  They're constructed slightly different, each one, but they're the same concept, they're the same --

Q    And is there any disagreement in the trapping community about what constitutes a cubby set?

A    I've never heard any.

Q    You've never heard any.

A    No, sir.

Q    In the whole time you've been working there?

A    That's correct.

Q    In all the classes you've given?

A    That's correct.

Q    Now, Mr. Crawford is a teacher at these classes, right?

A    Yes.  He taught for two years, yes.

Q    And what did he teach there?

A    Trapping methods.

Q    What type of trapping methods?

A    He -- as I said, generally was preparation of traps, types of, and traps specific to animals on the Kenai National Wildlife Refuge.

Q    So, he was one of the people that -- who chose him to teach?

A    I did.

Q    And when did he start teaching this class?

A    He taught 2009, 2010.

Q    And how long has he been trapping out there?

A    I don't know for sure.

Q    Has he been trapping out there since you started working there?

A    Far as I know.

Q    Could he have been trapping there before you came there?

A    He sure could have.

Q    And so what made him qualify to teach your trapping

class?

A    I thought in my experience, Mike was a very good trapper,

I still think that, and he's a very good speaker.

Q    Did his knowledge about trapping have anything to do with

your choice of him as a speaker?

A    That's what makes a good trapper, yes.

Q    You felt he was a knowledgeable person about all the

different types of traps and sets?

A    I did.

Q    And in any of these classes, has there ever been any

discussion about what constitutes a cubby set?

A    Not that I recall.

Q    You don't recall any conversations at all and you don't

recall making a diagram about that in these classes?

A    I do not.

Q    Could anybody else have been -- do you attend all these

orien -- trapping orientation classes?

A    Yes, I do, but I have instructors for each of the items

on the agenda.

Q    So, you might not have been there when Mr. Crawford was

teaching or any one of these discussions on the types of sets

came up?

A    I'm always in the room, but I could be talking to another

instructor, preparing for the next segment, I could be on the

phone talking to a student.  I'm the lead instructor, so I

have -- it's a very large program to put on.

MR. COLE:  I've got to check my notes here just for

a second.

BY MR. COLE:

Q    Is there a definition of a cubby set in the Alaska

trapping regulations?

A    I don't believe so.

Q    Is there a definition of a cubby set in the federal -- or

the refuge -- at the refuge, is there a definition there in

any of the regulations?

A    No, there is not.

Q    So, someone who wanted to know what constituted and what

did not constitute -- well, let me -- no.  Let me withdraw

that.  You provided us with four diagrams of what you consider

to be cubby sets according to the Alaska Trapper's Manual,

Exhibit Number 3, right?

A    Out of one book, yes.

Q    And are there other examples of what could constitute

cubby sets?

A    Out of many, many trapping books.

Q    It's almost limitless the number of variations that could

arise as a result of how you define a cubby set, right?  You

can have a whole bunch of different ways to create these trap

sets.

A     But I think the key element here is the title of it is cubby set.

Q     Is there a definition for cubby in Webster's Dictionary?

MR. SCORDINO:  Objection, Your Honor.  He doesn't have Webster's Dictionary with him.  If he wants to present it, he can.

THE COURT:  If he knows, he can answer; if he doesn't, he can so say.

A     I don't remember that.

BY MR. COLE:

Q     You've never looked it up.

A     I've looked it up, but that exact answer I -- depends what dictionary you look into also.

Q     And that's because the definitions can be a little bit different depending on where you look, right?

A     I can't answer that.  I --

Q     Oh, I thought that's what you said.  And do cubby sets -- are they only for trapping lynx?

A     Lynx and wolverine.

Q     Any other animals?

A     The smaller fur bearers also; mink and sometimes -- well, mostly mink.

Q     Now, as I understand it, you -- when you look at Exhibit Number 1 and you read -- you -- you read to the Court the special conditions that applied to Mr. Crawford, right?

A      Yes.

Q      And you referred to number seven, right?

A      Yes.

Q      And read that again now.

A      Number seven is:

       "Cubby and flag sets are not allowed when the lynx

       season is closed."

Q      Could someone read that to mean that --

      MR. SCORDINO:  Objection, Your Honor.  Calls for speculation.

      MR. COLE:  Well, I haven't asked the question yet.

      MR. SCORDINO:  The question is could somebody.  I mean, just to --

      THE COURT:  Let him ask the question.

      MR. SCORDINO:  Okay.  And then I'll --

      THE COURT:  You may ask.

BY MR. COLE:

Q      Could someone read number seven to require both a cubby set and a flag set together are not allowed when the lynx season is closed?

A      I can't --

      MR. SCORDINO:  Objection.  Speculation, Your Honor. That calls for what somebody else could do.

      THE COURT:  I'm going to overrule the objection. You may answer.

A     I don't think so.  And you ask my opinion, it says "cubby" then the word "and flag sets."  It's very clear to me.

BY MR. COLE:

Q     And is a conjunction, right?  You know what that is?

A     If I stretch my memory.

Q     It means together, right?  If you wanted it to be separate, cubby or flag sets would be the more appropriate way to write this, right?

A     I -- I can't answer that.  I'm not a English major or it -- I've never heard any problems with the way it's been put before.

Q     Has anybody ever asked you this -- addressed -- had this issue come up before?

A     No.

        MR. COLE:  I'm just looking at the notes that my client sent me.  If I could just have a second.

        THE COURT:  You may.

                        (Pause)

BY MR. COLE:

Q     Exhibit Number 2 was the picture in the Power Point that you provided us?

A     Yes.

Q     That picture was produced for a seminar that occurred in 2009, right?

A     No.  The law enforcement officer that gives the class,

the segment of his portion, uses this in his Power Point.  It

could have been used in something else, I don't know all uses

of it.

Q    This -- this was one that was part of the officer's

orientation presentation?

A    The trapper orientation, the officer part, yes, as they

go over all the -- each and every stipulation -- condition.

Q    Well, the reason I ask that is because the -- the -- it

looks to me like it would not apply to the year 2010.  Am I

wrong on that?

A    I -- I don't understand why it would not.  Just the dates

would be changed.

          MR. COLE:  Well, it -- it says -- I'm trying to find

-- which one is that again?

          MR. SCORDINO:  It was M.

          MR. COLE:  M?

          MR. SCORDINO:  Yeah.

          MR. COLE:  Thanks.

BY MR. COLE:

Q    It says:

          "Cubby sets may only be used from January 1st to" --

          "through January 31st, 2009."

Is that what the regulation was in 2010 and 2011?

A    If that was the open -- that would have been the open

season for lynx.

Q    What was the open season for lynx in 2011?

A    I -- I would have to look that up again.  I believe it was January -- it closed February 15th, I do know that.  The starting date I'm not for sure of.

Q    So, would that be accurate?  Would this be an accurate diagram for the year 2011?

A    Every -- everything except the dates, yes.

Q    Well, isn't the date kind of important?

A    Yes, but I was -- for this is to bring what we consider a cubby set and this is a cubby set.  The date does change every year with with Power Point.

Q    So, this is another example of what a cubby set is.

A    Yes.

Q    This one, does it have a tunnel in front of the -- is -- is the trap in a tunnel?

A    Yes, it is.

Q    It is.  Okay.  But you can't say that this particular diagram was presented in the orientation of 2010?

A    Yes, I'm sure it was.

Q    Are you sure it was or are you --

A    This is --

Q    Do you remember this -- this one would have been presented in 2010?

A    I can find that out for sure, but this Power Point is --

Q    I want to know as you sit here and testify, was this

presented?  Can you testify to that?  Yes or no.

A    No.

MR. COLE:  That's all the questions I have.

THE COURT:  Redirect?

MR. SCORDINO:  Thank you, Your Honor.

**REDIRECT EXAMINATION**

BY MR. SCORDINO:

Q    Opposing counsel stated that we've presented a limitless variation of what could be a cubby, and you said that wasn't right.  Why isn't that right?

A    As I look at the pictures and the photographs in these books that are in front of me, each one of them has one entrance, it's covered, and it's with the bait in the back. The tunnel can be different shapes, sizes, lengths, I mean it can be all different shapes, but it's a covered -- a covered area with one entrance.

Q    Okay.  And what -- so, the -- let's go through the key characteristics of a -- of a cubby.  First, what do we need?

A    A tunnel of some short -- sort.

Q    And by a tunnel, you mean something --

A    Constructed or natural.  It's just -- you want to lead the lynx into this -- to the bait with only one entrance.

Q    Okay.  So, it has one entrance.  What's in the -- and what's in the back?

A    In the back will be placed scent or bait.

Q     And then those -- is there any other ways into the trap other than the entrance?

A     There's only one entrance and that's where the trap of some sort is set.

Q     And all cubbies have some entrance and some scent -- some attractant in the back --

MR. COLE:  Objection.  Leading.

THE COURT:  Restate your question.

BY MR. SCORDINO:

Q     So, what do all cubbies have?  What are the characteristics of all cubbies?

A     A trap set at the entrance, only one entrance, it's covered so there's no other way in, and there's a bait or scent at the back which will lead the animal through the entrance, through the trap.

Q     So, on page sixty-one where it says the main idea behind a cubby is to make a structure that will guide the animal into an area where you have placed bait and lures.  Is that -- is that what you're talking about?

A     Yes, it is.

Q     So, is this providing a definition?

A     Yes, it does.

MR. SCORDINO:  Okay.

MR. COLE:  Objection.

THE COURT:  I'll let the testimony stand.

BY MR. SCORDINO:

Q    And you talked about the depth and you were saying even as short as six inches in the tunnel depth.  Would that be a good idea when you're trapping to have your bait really close to the entrance?

A    It would be further back would be better back would be better, yes.

Q    Why is that?

A    Because you want to lead the lynx into the one entrance through your trap, so he cannot get to the bait or the scent any other way except going through the entrance where your set -- your trap is set.

            MR. SCORDINO:  I have no further questions.

            THE COURT:  Recross, if any?

            MR. COLE:  No.

                    EXAMINATION BY THE COURT

BY THE COURT:

Q    Officer Titus, I understood when you were talking about Exhibit 2, that you didn't have access to the 2010 material because of the Power Point; you just didn't have access to it.

A    No.  The Power Point is on the law enforcement officer that gave the class, and I was unable to find him.  We're all off different days and --

Q    Who oversees the material to determine the content of the orientation class?

A    Overall, I do, but the law enforcement officer does, but the Power Point for the regulations together -- that's his part of the program, and --

Q    Are you able to say whether for the year 2010 there was something presented similar to this, Exhibit 2, that -- or something that talked about a cubby set?

A    Yes.  They'd used the Power Point, and with my knowledge, only thing they change are the dates and what also is relevant -- any changes that may come with the regulation.

Q    Exhibit 2 uses the phrase "cubby and flat sets."  Is there a flag displayed in the illustration here in Exhibit 2?

A    No, there is no flag in this set.

Q    Is there something in the presentation that talks about a flag set?

A    No, there is not.

Q    Can you trap just using a flag set for these particular fur-bearing animals and not a cubby set?

A    Yes, you can.

Q    Explain that.

A    The flag is an attractant.  A cat is very curious, and so they see like a CD flashing or a flag flashing, they will head for that and just like a cat, when a cat plays, you dangle something above them, the cat's going for that and the best set is a leg-hold -- I guess they're called foot-hold traps now -- to place right below it.  And as the cat comes up to

that, he's watching that and coming right underneath it, and will place his foot into the trap. That is a flag set.

Q    How would one learn in the orientation what a flag set is?

A    By asking questions. Our officer goes through each condition -- each slide, each condition. He reads the condition -- and our classes are very open for questions. We -- we -- we want questions.

Q    About how many people would receive a special use permit similar to the one here, at least with a condition seven in it?

A    We normally give out -- for this year, we're close to a hundred permits. Last year was over a hundred.

Q    The Alaska Trapper's Manual, Exhibit 3, where would one find a copy of that?

A    Excuse me. Where I got my copy is through the Alaska Trappers Association. They have a very nice web page. Where I got my copy that many years ago, I -- I can't recall. This was -- I don't remember when it was first published. It looks like 1991.

Q    Do you know whether or not this manual is on-line?

A    It is on-line, yes.

Q    Any cost to receive or to access it?

A    There is a charge for it.

Q    Is there a copy kept in the refuge office?

A    Yes.  I keep a copy in my office, and each law enforcement officer has a copy.

Q    Does the public ever come in and ask to see books or manuals on trapping?

A    They don't ask to see that, but they do come in with questions all the time.

Q    So, the refuge doesn't have a library that's accessible to the public.

A    By request, yes.

Q    You do.

A    Yes.  They're more than welcome.  In my office, I have a -- a shelf with the trapping magazines and trapping books, and that's open to anyone that would like to come in and look at them.

Q    You were asked a couple of questions -- it's probably easier just for me to ask these; a couple of them are repetitious.  Is there any definition of cubby set or flag set in the Kenai National Wildlife Refuge Special Use Permit?

A    No, there is not.

Q    What about the federal regulations?

A    No, there is not.

Q    What about federal statutes?

A    No.

Q    What about Alaska statutes?

A    No.

Q    What about Alaska regulations?

A    No.

Q    The one publication that you produced here, Exhibit 3, is there anything in here that distinguishes a flag set?  You talked about how you could set one separately.  For example, page sixty-two and page sixty-one has illustrations that have the word "attractor."  One looks like maybe the wing of a bird or something on page sixty-one, the second on page sixty-two looks like a flag or ribbon, called attractors.  There's nothing in these pages that I can see that indicate that you could trap just using a flag.

A    I -- I would have to look through the -- for that myself since I don't use flag sets my -- I have not used flag sets myself.

Q    Are you familiar with any publications in the trapping area that talk about flag sets per se?

A    No.  For the reason I don't -- I don't use them -- did not use them.

        THE COURT:  Any other questions by the Government?

        MR. SCORDINO:  No, Your Honor.

        THE COURT:  By the defendant?

        MR. COLE:  I have one based on the questions that you asked.

        THE COURT:  You may ask it.

                        **RECROSS-EXAMINATION**

BY MR. COLE:

Q    The "Alaska Trapper's Manual" that you were referring to that's on-line?

A    Yes.

Q    That -- the -- it's on-line for sale, right, not for display?

A    It -- it's for sale, yes.

Q    But you just can't go on that website and read it.

A    Not that I know of.

MR. COLE:  Thank you.  That's all the questions.

THE COURT:  You may step down.  Does the Government have another witness?

MR. SCORDINO:  We do have another witness, Your Honor.  I'd like to call Kent Moos to the stand.

THE COURT:  As he's coming forward, I'm willing to go forward now.  I don't need a recess, but I'll just offer if anyone does, we can take a short break.

MR. SCORDINO:  Do you need a break before we start? I'm all right.

MR. COLE:  I'm fine, Your Honor.

THE CLERK:  (Indiscernible - mumbling.)

**KENTON MOOS, GOVERNMENT'S WITNESS, SWORN**

THE CLERK:  Please have a seat.  And for the record, please state and spell your full name and provide your address.

THE WITNESS:  Kenton Gary Moos, M-O-O-S.  Address is P.O. Box 23, Galena, Alaska, 99741.

THE CLERK:  Thank you.

THE COURT:  You may proceed.

MR. SCORDINO:  Thank you.

**DIRECT EXAMINATION**

BY MR. SCORDINO:

Q    Ms. Moos, how long have you been trapping?

MR. COLE:  Sorry.

A    I set my first trap at about age eight, but I had not routinely trapped until about age twenty, so that puts me at about twenty-six years of trapping.

BY MR. SCORDINO:

Q    And what states have you trapped?

A    North Dakota, Minnesota, Alaska are the three states that I've trapped in.

Q    And how did you come about your knowledge of trapping?

A    Through reading different publications, through individuals, mentors, who taught me, either being out on the trap line with them or them coming with me.  Also with personal experience, experimentation, and so forth out in the field.

Q    And I see you brought a book with you.  What -- is that an example -- what -- what book did you bring with you?

A    I brought the "Yukon-Kuskokwim Region Trapper's Handbook"

put out by Calista.  This was a publication that was -- in part of my Alaska experience, I lived out in Bethel, and this was a handbook used out in Bethel as far as for trapper education.

MR. SCORDINO:  All right.  This you haven't seen before.

BY MR. SCORDINO:

Q    So, I'm handing you Exhibit 4 marked for identification. Could you describe what this is?

MR. COLE:  Judge, I'm going to object on the grounds that this is the first I've seen this, number one, and, number two, the relevance of this particular document for two purposes:  Number one, it has to do with the Yukon-Kuskokwim region and we're not talking about the Yukon-Kuskokwim region. It's prepared by Calista, which is -- as far as I know, is not a fish and wildlife agency and, number three, there's no showing, nor do I think there -- believe there's going to be a showing that anybody was required to read this as part of the conditions of the permit that people received to trap in the refuge.

THE COURT:  Government's response?

MR. SCORDINO:  Your Honor, this provides examples of flag sets and cubby sets.  These are the type of materials that a person could look to when they're trying to determine a -- when they're looking at their special use -- special

condition permit. It also shows the general term, cubby set, how it is used throughout the trapping community. The fact that it's used in western Alaska rather than the Kenai Peninsula -- you know, where this specific document comes from that point just shows you that it has a more general application.

THE COURT: With respect to the objection that this is the first time counsel for the defendant has seen the exhibit, I'll overrule that objection. There's no requirement imposed that -- that a witness has to produce his documents ahead of time. It's just not -- just not a requirement for an evidentiary hearing pretrial.

With respect to the type of handbook it is and all, this is a hearing before the Court, and I think it goes to the weight of this. I'm well aware of the statement that you're making, it's a different region, but I'm going to allow the Government to make its argument, and then I'll rule at the end of the hearing the result of it, but so far, I'll let the Government proceed.

MR. SCORDINO: Okay. I'm sorry. Did we admit Exhibit 4?

THE COURT: No, I haven't admitted it yet.

MR. SCORDINO: Okay. That -- okay.

BY MR. SCORDINO:

Q    Sir, could you describe what this book is?

A    Again, it's a -- it's one resource that I've used as well as many others in the education -- self-education as far as trapping, and it also just provides visual examples of cubby sets, as well as flag sets.

Q    Does it provide the general def -- general ways of -- of cubbies and flag sets as you understand it?

A    Yes, it does.

         MR. SCORDINO:  Your Honor, I'd move to admit Exhibit 4.

         MR. COLE:  Object.  I think I stated my objections before.

         THE COURT:  Yes.  For purposes of this hearing, I'm going to admit it.  Again, I'll have to determine how much weight to give to it based on its source and other factors, but I'll at least allow it to come in.

     (Government's Exhibit 4 admitted)

         MR. SCORDINO:  Okay.

BY MR. SCORDINO:

Q    What -- what other sources did you use?  When you were looking at books, what other books did you turn to?

A    Numerous publications, including the -- Minnesota's trapper handbook, North Dakota's Fur Takers Association's handbook, Stanley Hawbaker's Trapping and Fur Bearers of North America, I believe is the title, numerous Alaska trappers' publications, the "Alaska Predator Caller," which is the

magazine put out by the National Trappers Association.  Just a wide variety of publications I've read as well as used and recommended to others.

Q    What type of trapping have you done?

A    Wide variety.  From muskrat trapping in the Dakotas to -- in Minnesota, I trapped beaver, otter, fishers, marten, raccoons.  Up here in Alaska, marten, lot of beaver, otter, wolves, wolverine, ermine, mink --

Q    How about lynx?

A    Lots of lynx.

Q    Do you currently trap?

A    Yes, I do.

Q    And where do you live?

A    Galena, Alaska.

Q    Where have you trapped in Alaska?

A    Galena, as well as the Bethel area.

MR. SCORDINO:  Your Honor, I move to admit this witness as an expert witness.

THE COURT:  In what field?

MR. SCORDINO:  In the field of trapping.  He will provide the Court with his expertise on the -- on what the general terminology used by trappers is for cubby trap -- for cubby sets and for flag sets.

THE COURT:  Mr. Cole?

MR. COLE:  I object.  Relevance.  How can this

person come in here and -- who is from Galena, who apparently has never had a refuge permit, never trapped in the Kenai refuge, and give his opinion on language that is contained in a refuge permit? So, I object.

MR. SCORDINO: Your Honor, it goes to the general use of the language. This language is specific language that is used for trappers. If I were talking about oil -- the oil business, I'd be talking about casing strings, casing shoes. They make no sense outside of oil business. In this, I'm talking about trapping, so I'm bringing in a trapper who has the specific knowledge of what cubby sets mean and what flag sets mean, as anybody in the trapping community would have.

MR. COLE: And, Judge, I would understand that if he had ever trapped in the Kenai refuge or if he even had a federal refuge permit, but just like you don't -- when you have a petroleum expert just say that a marine petroleum expert can come up and testify about the conditions in Prudhoe Bay and -- and become an expert, how can you have a person who lives in Galena come in and testify about what the terms of a Kenai refuge permit are and how you should interpret that?

THE COURT: Is the defendant's argument that a cubby set is unique or particular to the Kenai area?

MR. COLE: No.

THE COURT: In other words, it's -- you're saying it's a generic term.

MR. COLE:  It -- it -- it could be considered a generic term.  How it's being enforced in the Kenai is the issue.

THE COURT:  Well, as I understand the Government's view, the lack of definition is because it's a general term and use, and they don't have to define something that is generally known, at least in the trade of trapping.  I mean, that's the argument they're making, and I will allow them to make that.  Whether I agree with it or not is different, but I'll allow that the Government can put on its case.  Do you want to voir dire at all about being an expert knowledgeable as to --

MR. COLE:  I would like to ask him a couple of questions on voir dire.

THE COURT:  You may.

                              VOIR DIRE

BY MR. COLE:

Q    Is it Moo?

A    Moos [pronounced Mose].

Q    Moos.  Excuse me.  Mr. Moos, how long have you lived in Galena?

A    A little over six years.

Q    And before living in Galena, where did you live?

A    In Bethel.

Q    And before Bethel?  How long did you live in Bethel?

A    Three and a half years.

Q    And what do you do for a living?

A    I am the refuge manager for the Koyukuk/Nowitna National Wildlife Refuge.

Q    Oh, so you're a federal employee.

A    I am.

Q    And you trap on the refuges that you manage?

A    One of the refuges, but primarily off refuge.

        THE DEFENDANT:  Excuse -- excuse me.  I -- I'm having trouble hearing everybody there --

        MR. COLE:  Okay.

        THE DEFENDANT:  -- on the last question there.

        MR. SCORDINO:  You can turn that down (indiscernible - voice too low).

        MR. COLE:  He just said that he traps off refuge.

        THE WITNESS:  I do -- I do trap on the Koyukuk refuge as well.

BY MR. COLE:

Q    So, do you require -- is -- on -- is a conditional use permit required on that refuge?

A    No, it is not.

Q    Have you ever trapped in Kenai?

A    No, I have not.

Q    Have you ever had a conditional use permit for trapping?

A    No.

Q    The Exhibit 4 that you rely upon -- relied upon?  One of the exhibits that you just testified to, is that mandatory reading outside of the Yukon-Kuskokwim region for trappers?

A    Mandatory?  No, absolutely not.

Q    Is this mandatory reading for trappers in the Yukon-Kuskokwim River -- region.

A    No, it is not.

        MR. SCORDINO:  Objection, Your Honor.  Relevance.  I don't know how this goes to his expertise.

        THE COURT:  It does seem to go beyond that.  I'll let the testimony stand.

BY MR. COLE:

Q    Have you ever testified as an expert before?

A    No, I have not.

Q    Have you ever prepared expert testimony before?

A    No, I have not.

Q    Have you ever written anything about trapping before?

A    Have I written anything?

Q    Articles?

A    No, I have not written anything.

Q    Have you ever been published about trapping before?

A    No, I have not.

Q    Tell me again what your job is?

A    I am refuge manager for the Koyukuk/Nowitna National Wildlife Refuge.

Q    Do you enforce trapping regulations in that refuge?

A    No, I do not.

MR. COLE:  That's all the questions I have, Your Honor.  I just, again, renew my objection on the grounds that this person is not qualified to give the type of opinions apparently that the Government would like him to give, particularly in light of the fact that he has never trapped in Kenai, he's not familiar with the condition -- conditional use permit, and things like that.  So, I renew my objection.

THE COURT:  With respect to an expert, we sometimes talk about Daubert and the qualifications there.  As I gather, he's not offering scientific evidence.

MR. SCORDINO:  No, Your Honor.  The -- the point of this witness is to present evidence of what the general -- you know, what the trappers -- how trappers use the definition cubby set and flag sets, which are not in the general vernacular of everyday people.  These are specific language of a specific community of people that have specialized knowledge.  His -- his testimony will go to that and provide evidence that as lay people don't have knowledge of.

THE COURT:  It's one thing for him to give his experience.  Are you going to ask him to draw any conclusions or give any opinion?

MR. SCORDINO:  Not -- not on the evidence because it's -- we're not on the evidence yet.  So, just on what flag

-- what a cubby set and what a flag set mean, yes.

THE COURT: Well, I'm not sure how he qualifies as an expert. He has certain experience and you're asking him to relate his experience in a different community about the meaning, I guess, of cubby set --

MR. SCORDINO: Yes.

THE COURT: -- but I don't know that he's an expert -- that his testimony should be received as an expert.

MR. SCORDINO: Your Honor, an expert is any person who can provide speci -- specified knowledge on an issue that will help the Court in a -- you know, in coming to a conclusion. I mean, it doesn't have the old definition of -- of expert where you had this -- you know, had a really high bar. The bar is low now, and it's just a person who can show specialized knowledge that will assist the finder of fact in -- in making his determination. This -- he has specialized knowledge on what in the trapping community the terms cubby set and -- and flag set mean.

THE COURT: How do I know that the meaning is the same in a different part of the community of the State of Alaska?

MR. SCORDINO: That's what we're going to address. We're going to address that as a part of why he's come from different places and who he -- and what he knows through the trapping community.

THE COURT: So, the different places you're going to compare would be the North Dakota, Minnesota experience that he's had.

MR. SCORDINO: The Alaska interior, Alaska Y-K Delta, and also who he has spoken to.

MR. COLE: Well, that's hearsay.

MR. SCORDINO: It is hearsay. He's an expert, as I'm trying to get him in as, and an expert can rely on hearsay evidence, and he's using it to do -- said it -- say why he believes that that's what the definition of -- you know, that this is the general trapping term, a cubby set, and what the general ter -- trapping term is for a flag set. He has specialized knowledge that nobody else here in the court does.

THE COURT: And how does he have this specialized knowledge?

MR. SCORDINO: Through twenty-five years of trapping experience and through -- generally, he's the only trapper here. We've had the officer who is a trapper as well, but he's here as a trapper who is not an officer, he's -- he's a trapper, and providing knowledge of what the trapping community uses.

THE COURT: Well, I -- I think I'm not going to allow it. I have some hesitation because basically it's a person -- it's a lay person with some experience who's trying to relate his experience but infer from it that the Court

should conclude what the meaning of the term in the special permit is. And he's not had a special permit, he doesn't issue the special permits. I -- I understand what you're trying to do is just simply show that -- that cubby set is generic, but as far as an expert, I --

MR. SCORDINO: Your Honor, I mean, to the actual, you know, standard for the vagueness doctrines, it is whether "the challenged phraseology is indigenous to the idiom of that class." He understands the idiom of that class of trappers. He provides expert information -- expert testimony on what trappers look at. He is a lay person with additional knowledge; that additional is what makes him an expert. He's providing expertise to a court that cannot be provided by anyone else here.

THE COURT: I don't -- you just cited something. What's the authority that you're relying on?

MR. SCORDINO: This is United States v. Weitzenhoff, 35 F.3d 1275. This is a Ninth Circuit, 1993.

THE COURT: All right. Give that cite to me again.

MR. SCORDINO: United States v. Weitzenhoff, which is W-E-I-T-Z-E-N-H-O-F-F, 35 F.3d 1275.

THE COURT: Do you have a copy of the opinion or headnote there?

MR. SCORDINO: I -- I just have the --

THE COURT: The cite.

MR. SCORDINO: -- an excerpt from it.

THE COURT: Well, I agree that specialized knowledge can be admissible if it benefits the Court, and here the Court is making the decision, not a jury.

MR. SCORDINO: Mm-hmm (affirmative).

THE COURT: I'll allow him to relate his experience. I'm not sure that -- that he has to be an expert to do that.

MR. SCORDINO: One reason I want him as an expert is so he can rely on the hearsay evidence of everybody else in the community so he can provide the community understanding of what cubby and flag sets mean. He -- he is impugned in the -- in the trapping community and this -- and the fact that he's an expert allows him to rely on hearsay evidence as well.

MR. COLE: Judge, to me -- and I apologize for interrupting, but it seems to me that that's the whole purpose why we're having this, is so that he can get in hearsay testimony that he knows he can't get in otherwise, and I object to that on the grounds that -- for two reasons. The Court doesn't have to allow -- the Court certainly could allow someone to testify as to evidence that is not normally admissible in an expert testimony -- through the expert testimony, but you don't have to allow it. And if the sole purpose of the Government is to make an expert so that they can get in hearsay testimony, I would submit to you that that would be the type of situation that you wouldn't allow it, an

expert to relate that information to you. If it's only being done for the purpose of getting in hearsay evidence, which is very difficult for another party -- another -- a defendant, particularly in a criminal case, it violates their right to confront.

So, the Court has to be very careful and conscientious about allowing the Government to get around the confrontation clause in a criminal case through making someone an expert.

THE COURT: Let's take a five-minute recess and I'm -- I want to look at that case.

THE CLERK: All rise.

MR. COLE: Madam Clerk?

THE CLERK: This matter stands in recess until the call of the gavel.

MR. COLE: Should Mr. Crawford call back or should he just remain on --

THE COURT: He could probably stay. It's on the (indiscernible) bridge.

MR. COLE: Can you hear that, Mike?

(Recess at 3:45 p.m., until 3:52 p.m.)

THE CLERK: All rise. I'm sorry. His Honor the Court, the United States District Court is again in session. Please be seated.

THE COURT: The matter before the Court is whether

to allow the witness who's under oath now to testify as an expert.

When a person is tendered as an expert, the defense has a chance to voir dire, and the Government basically is resting on what has been presented.  Is there any additional foundation that you --

MR. SCORDINO:  Yes, Your Honor.

THE COURT:  -- have?

VOIR DIRE CONTINUED

BY MR. SCORDINO:

Q    Mr. Moos, have you ever instructed any classes on trapping?

A    Yes, I have, numerous times.

Q    Where at?

A    Both in Galena, as well as down in Minnesota.

Q    Okay.  And you say numerous times.  Can you give a -- a general number on how many times?

A    Down in Minnesota, I -- I -- I belonged to an organization which is similar to Boy Scouts, it's called Rural Rangers, and we had annual -- well, several camp-outs, so probably five to eight times instructing down there during those camps.  Up in -- in Alaska here, we have put on a trapping clinic for our elementary students there in Galena, which myself as well as our supervisory biologist and another one of our biologists put on a trapping clinic with the

Case 3:11-cr-00105-SLG    Document 22    Filed 01/06/12    Page 76 of 111

elementary school kids.  We have also assisted, both myself as well as staff, with trapping clinics put on by the State of Alaska; the area biologist, Glenn Stout.

MR. SCORDINO:  Your Honor, I have no further questions.

MR. COLE:  I have one or two.

THE COURT:  Okay.

                              VOIR DIRE

BY MR. COLE:

Q    So, how many clinics have you put on actually in Alaska?

A    In Alaska, one that was solely for -- by myself as well as my staff, in which all of us basically took different aspects of trapping, and then also we participated with the State, and I believe I participated in one that I can recall with the local villages in the Galena area.

Q    So, you've done one that you and your staff had put on, right?

A    Correct.

Q    And that was for elementary kids.

A    Yes.

Q    Kids that didn't even have a trapping license, right?

A    They're not required to have a trapping license.

Q    But -- so it was to a bunch of -- how old were the kids? Elementary school, under sixth grade, fifth grade?

A    From third grade up to eighth grade, actually; through

junior high.

Q    Okay.  That's one that you've put on.  Now, the other one that you've assisted on, that was with the State biologist who was giving that?  And who was that presented to?

A    That was to just the local community in Galena.

Q    How many people would have attended that?

A    Oh, there was very few, I believe, at that one, like five or seven people.

Q    So, you've put -- you've assisted in putting on a class that helped five or six people that wanted to trap.

A    That was open to the entire community, yes.

Q    But only five or six people showed up.

A    That's correct.

        MR. COLE:  That's all the questions I have.

                        VOIR DIRE

BY THE COURT:

Q    Mr. Moos, have you ever conducted any surveys or experiments or studies on the understanding of a cubby trap -- cubby set?

A    No, because, again, the term is -- is very familiar with trappers, so as far as putting on a survey, as far as that type of definition, no, I can't say that we have.

Q    If you were to testify about what people have discussed with you or said about a cubby set, I gather you wouldn't know how they learned about a cubby set.

A    No, but I would liken it to if this was a traffic situation -- in -- in the -- in the driver's guide, it has a picture of a stop sign, everybody knows what a stop sign is, but there's no specific definition of a -- it's red, it's so big, and so forth in any of those publications.  Same with the cubby set.  It's the same thing, same idea.  Everybody knows what a stop sign is who are drivers because you're familiar with it.  Is the same as a cubby set in the trapping community.  It's very well known, it's a type of set, and it's very familiar with the trapping community.  I hope that makes sense.

THE COURT:  I understand what you're saying. Basically, the last statements were offered as a -- as an expert conclusion of everybody knows what a cubby set is, basically, is -- is the conclusion he's drawing.  What we have here is an issue for the Court to decide in statutory construction of language in a permit, and I -- I'm reluctant to allow this testimony in the form of an expert to simply draw that conclusion.  He's not done studies or -- I don't -- I don't know where the information is going to come from.

I understand what he's saying and I understand the Government will make this argument that it's understood in the -- in the trade, I understand that, but as far as the testimony goes, I think there's not a sufficient foundation for him to offer it as an expert, notwithstanding his

experience, again, because I don't -- I don't know where the information would have come from that other people have.

The defendant is arguing that because it's not readily defined, you can't find it in the statute and the regulation and the permit, that he shouldn't be expected to understand it. And the Government is arguing that like the stop sign, you know, the information is there and you don't need a verbal definition of what it is.

I understand the argument, but I think I'll disallow the testimony as an expert. So, unless you have anything else for him in the way of questions --

MR. SCORDINO: I'll just go to show what a flag set is real quick.

**DIRECT EXAMINATION CONTINUED**

BY MR. SCORDINO:

Q    If you'd turn to Exhibit 4, the last page of that, page forty-six. What does that depict?

A    That depicts a flag set with a trap located underneath it.

Q    So, what makes it a flag set?

A    The whole premise behind trapping is to lure an animal into a -- into the trap. There are several means by doing that. One of them is a visual attractant, one would be a bait, a food attractant, another is a sex or a territorial- type attractant or so forth. A -- the basic premise behind a

Case 3:11-cr-00105-SLG    Document 22    Filed 01/06/12    Page 80 of 111

flag set is that you're keying in on the visual attractant in which the animal is looking at and is attracted to it.  I have an example, visual example, here as well.  So, imagine this hanging from the tree, wind comes, makes it flutter, draws the eye of the animal to it, the animal's attracted to it, and then would then, therefore, step in the trap.

Q    How about for -- for cubby sets, what attracts the animal?

A    Again, you're primarily looking for the food attractant or basically appealing to its appetite.  So, you are putting a bait in the back of the set to appeal towards -- to that attractant -- that particular attractant.

Q    And what animals do you use cubby sets for?

A    I've used cubby sets in Minnesota for -- for fishers, for bobcats -- unfortunately, I was not successful with those, but -- and mar -- marten to a lesser extent, and near water I've used it for otter and for mink as well.  Up here in Alaska, in the uplands -- again, when you're making a set, you're looking at the whole circumstances, and so most of the cubby sets I make up here are more upland, so they're geared almost strictly and entirely towards lynx and/or wolverine.  I have caught some marten as well.

Q    Would the lynx in Kenai be different be different than the lynx in Galena for how they would react to either of these traps?

A    No, they would not.  Again, you are -- you are operating off the basic characteristics and weaknesses in an animal -- in an animal's instinct in order to lure them in to be trapped.  Again, that's visual.  a lynx in Kenai would be no different than a lynx in Galena as far as the methods and means of trapping because you're appealing to that basic behavior of that particular species.

Q    When you have a cubby set, do you need a flag set as well to attract a lynx?

A    No.

Q    Have you ever caught lynx without a flag set?

A    Absolutely.

Q    Is there anything unique about -- about cubby sets that attracts lynx more than other type of sets?

A    Again, the idea is you're appealing towards your weaknesses and behavior, so it's a food attractant.  The reason cubby sets are used are for a number of -- number of reasons.  One is a cubby set somewhat shields the -- the bait so that non-target species are not attracted to it; for example, birds.  By putting that bait in the back of the cubby set, you're avoiding that -- those incidental catches.  Another thing again with -- with a cubby set which has been covered quite a bit here is you're try -- you're attempting to funnel that animal into stepping into one area where your trap is.  Again, so you're -- the whole idea behind a cubby set --

there's many, many nuances that you can incorporate into a cubby set, but what you're trying to do is funnel that animal into a single area to step on a single spot so that you can make the catch.

Q    So, how -- how would you define a cubby set?

A    My definition of a cubby set would be any natural or altered -- altered structure which is cave-like, with a single entrance, funneling that animal into that single entrance by use of a lure or some type of attractant in the back.

Q    Did you have the same definition in Minnesota?

A    Yes.

Q    Did people in North Dakota operate under the same definition?

A    Yes.

          MR. COLE:  Objection.  Calls for hearsay.  Calls for a conclusion.

          THE COURT:  Sustained as to the last question based on the way it was asked.  Previous questions stand.  They were not objected to.

BY MR. SCORDINO:

Q    When you were in North Dakota, did people use cubby sets?

A    Yes, they do.  I did not because of the species I was targeting.

Q    Did you see other people's traps?

A    Yes.

Q    Did the definition used for cubby set vary at all between Minnesota, North Dakota, Galena, and the Y-K Delta?

MR. COLE:  Objection.

MR. SCORDINO:  On what grounds?  It's -- I asked did your definition --

MR. COLE:  That's not what he asked.  If he's -- if he's limiting his question to what his definition is, that's fine, but that's not what he asked him.

THE COURT:  The objection is well taken.  If you want to limit it --

MR. SCORDINO:  I said his -- I said is your def -- sorry.

BY MR. SCORDINO:

Q    Is your definition -- did your definition of cubby set change in any of those areas?

A    My definition did not change, no.

Q    And where did you get your definition from?

A    From literature, from -- and from experience and from mentors who I worked with.

Q    One of these -- was the literature Alaska-specific?

A    No.

Q    So, the literature you read defining cubby sets -- did the definitions that you read on cubby sets for Minnesota, did it have this -- a similar -- the same definition?

MR. COLE:  Objection.  Leading.

THE COURT:  All right.  That -- I'm sorry.  I didn't listen carefully enough.

MR. SCORDINO:  It was leading.

THE COURT:  I was writing something down.  Go ahead and ask a new question then.

MR. SCORDINO:  Okay.  Sorry.

BY MR. SCORDINO:

Q    So, tell me -- tell me about how the books you've read, how they -- how they have defined (indiscernible) -- how they have framed your understanding of cubby sets --

MR. COLE:  Object --

BY MR. SCORDINO:

Q    -- and on the different areas?

MR. COLE:  Objection.  Relevance.

MR. SCORDINO:  That's straight the issue.  I don't understand.  The books he's read, how it frames his understanding of what cubby set means and from the different regions that he's lived in.

THE COURT:  Well, we've heard what his definition is.  Maybe it is helpful to the -- to decide this to learn where he got it from, so I'll allow it.  Overruled.

A    Again, to me, a cubby set is a cubby set is a cubby set.  It doesn't matter if it's in Minnesota, Florida, Texas, Mississippi, Alaska, doesn't matter.  A cubby set is a cubby set.

MR. COLE:  Objection then, non-responsive.

THE COURT:  It was a non-responsive answer.  That is correct.  Strike it.

THE WITNESS:  Should I rephrase that answer?

THE COURT:  Do you remember the question?

THE WITNESS:  Yes.

THE COURT:  You may answer.

A    Yes, my definition has -- did not change from the literature, from whether it's a -- from in the State of Minnesota or Alaska or any other state.  My definition stands for all the states or all areas.

THE COURT:  The question is where did you get your definition?

THE WITNESS:  Oh, I thought he asked if my definition changed with different areas.  I'm sorry.

MR. SCORDINO:  He had said he had read books from Minnesota and from North Dakota, in the books that he read.  That's my -- see if that varied his definition.  So --

THE COURT:  Let's try and speed up here if we can.

MR. SCORDINO:  Okay.

THE WITNESS:  I'm sorry.

BY MR. SCORDINO:

Q    If you were to set out a regulation to protect lynx, what type of traps would you -- in -- in your refuge that you're working in, what type of trapping would you not allow?

MR. COLE: Objection. Relevance.

THE COURT: Sustained.

MR. SCORDINO: The purpose --

THE COURT: What he would do doesn't matter.

MR. SCORDINO: I think -- he said the purpose of the regulation --

THE COURT: He didn't write the regulation.

MR. SCORDINO: No. I'm sorry. That the -- the officer said that the purpose of the regulation was to protect lynx when they're out of season. I'm asking him to tell me what you would do to protect lynx in that area, what type of traps he would avoid as his --

THE COURT: What he would do is not relevant.

MR. COLE: Judge --

THE COURT: What's -- yes, go ahead, Mr. Cole.

MR. COLE: I was just going to say, if you allow counsel to argue with you every time you make a ruling, we're never going to get done with this hearing. Every time you rule, he argues with you. I mean, my -- from where I practice, you don't argue with the judge; you take your ruling and you move on, and it's causing a huge delay in this issue. I don't mean to be kind of on point --

THE COURT: Let's move on a little faster.

(Pause)

MR. SCORDINO: I have no further questions at this

point.

THE COURT:  Do you need cross-examination of the witness?

MR. COLE:  Couple of quick questions, Your Honor.

**CROSS-EXAMINATION**

BY MR. COLE:

Q    Exhibit 4, the "Yukon-Kuskokwim Trapper's Handbook."  Who prepared that?

A    It was written by Calista -- or sponsored by Calista, which is the regional corporation -- Native corporation, and -- and I can leave a copy, this copy with you as long as I get it back because it's my only -- and in the cover page, it does -- Haley Hagarty (ph) and John Andrew are the two program directors who came up with this, I believe.

Q    Do you know who wrote this -- what person or entity wrote this?

A    Who actually wrote it?  No.  Again, it was sponsored by Calista, so --

Q    And do you know if this handbook is in the library of the Kenai refuge?

A    I do not know that.

Q    Do you know that if this is required reading for trappers in the Kenai refuge?

A    It isn't -- I think it's fair to say that it is not required reading.

Q    Going to page sixty -- or to page thirty-three, the second page of that exhibit.  Is there anywhere on that, that it says the term cubby?

A    I do not see the word cubby on that page.

Q    Going to the next page, thirty-four.  Is there anywhere on this that says the term cubby?

A    I do not see the word cubby on that page.

Q    Now, going to page thirty-six.  There's one reference to the term cubby, right?

A    Yes.

Q    Okay.  And there's three different diagrams, right?  On that page, there's three different dia -- there's a diagram of a tree, there's a diagram of a circle, and then there's a diagram with the tree and a bait.  Do you see all three of those?

A    Three diagrams depicting --

Q    On the one page.

A    -- the same set, I do believe.

Q    Oh, they are all the same set?  Ah, I gotcha.  So, this is one of the same -- the whole thing is the same?

A    Yes, that's what it appears to me.

Q    So, on this particular trap, there's a Conibear and a leg trap in the same set.

A    I believe what they're trying to put forth here is that on the same set, you can use either the leg-hold or foot-hold

or the Conibear.

Q    Is this referred to as a cubby set anywhere in this diagram?

A    Well, it does say "Make cubby under brush" -- "brushy spruce to protect" so --

Q    My question is real specific.  Is there anywhere on this diagram that it refers to this as a cubby set?

A    In the written description, yes.

Q    That's the one reference you have to the word cubby, right?

A    Yes.

Q    It doesn't say anything about a cubby set anywhere on this diagram, right?

A    No.

Q    And the fourth page, four -- forty-six, is there any reference in this to flag set?

A    No, there is not.

Q    You would agree with me that the purpose of every trap is to lure an animal to the point where you can seize or catch the animal and dispatch it, right?

A    That is what trapping is, yes.

Q    And bait traps in general all try to lure animals to come to a particular bait, right?

A    Yes.

Q    And you would agree with me that there are many different

ways to set up bait traps.

A    Yes.

Q    Some obviously are more successful than others, right?

A    Yes.

Q    And if you can tunnel or channel an animal toward a bait, you have a better chance of pushing them or getting to go in the direction of where they will be trapped or caught, right?

A    Yes.

Q    But not every trap set that channels or guides animals along a path is a cubby set, right?

A    Right, that is correct.

Q    On the other hand, some sets that guide animals toward a bait could be considered a cubby set.

A    Yes.  Again, cubby sets have certain characteristics that make them a cubby set, yes.

Q    According to you.  That's your experience, right?

A    Yes, but --

Q    There's no definition of cubby in Alaska state law -- trapping state statutes, is there?

A    No --

Q    There's no definition --

A    -- not that I'm aware of.

Q    -- of cubby sets in Alaska's regulations, right?

        MR. SCORDINO:  Objection, Your Honor, 403.  It's just -- we've gone over this.

THE COURT:  Overruled.

BY MR. COLE:

Q    There's no definition of cubby sets in Alaska's regulations, right?

A    No, there is not.

Q    There's no definitions of cubby sets in the conditional use permits that are issued by the Kenai refuge, is there?

A    As far as what I've seen, no, there is not.

Q    Can you find a definition of cubby set in the Alaska Trapper's Manual?

A    There are -- as one would say, a picture is worth a thousand words, so I would say, yes, there is, because they give very detailed diagrams of what a cubby set is --

Q    I didn't --

A    -- and it shows that.

Q    I didn't ask if they give diagrams.  What I asked is do they give a definition of what a cubby set is in the Alaska Trapper's Manual?

A    I feel they do, yes.

Q    You don't think there's a difference between showing somebody what an example of something is and telling them what something is?

A    I believe the best way to tell somebody is to show them.

Q    But you would agree with me that they don't tell you what it is, they just try and show you what one looks like.

A     I would agree with that.

Q     And is there any definitions of a cubby set in your Yukon-Kuskokwim Regional Trapper's Handbook?

A     There is somewhat of a definition, and I will read it. Again, shows by diagram, but also -- try to find it here. Sorry about that.

(Pause)

Natural cubby set, artificial cubby set, and I can provide this to you:

     "This is a natural-looking set.  Place bait in the back of the hole in a pile of debris or root cluster, and place the trap at the entrance."

Artificial cubby set:

     "Build a small shelter of rocks and set a trap at the entrance.  Place bait in the back of the shelter so the animal must pass over the trap to reach the bait.  Always hide meat or bait to prevent birds from being caught."

          MR. COLE:  So --

          THE WITNESS:  And again --

          MR. COLE:  -- can we -- Judge, I ask that that be made a part of the exhibit today as part of that --

          THE COURT:  What page is that, please?

          THE WITNESS:  That is page twenty-seven.

          THE COURT:  Any objection from the Government to

include that as part of Exhibit 4, or we can give it a different --

MR. SCORDINO:  No objection, Your Honor.

THE COURT:  All right.  We'll add it to it.

BY MR. COLE:

Q    You're a refuge manager, right?

A    Yes, I am.

Q    And -- and you try to make the rules as clear as possible so that people don't violate the rules and regulations within the refuge, right?

A    I suggest regulation changes, I don't make them, but yes, I am in the pro --

Q    But you -- you --

A    -- I do work through that process.

Q    You're involved with that --

A    Yes.

MR. COLE:  -- process, right?  Is there any reason why -- no, I'll withdraw that.  That's all the questions I have.

THE COURT:  Redirect?

MR. SCORDINO:  Well, I'll ask.

**REDIRECT EXAMINATION**

BY MR. SCORDINO:

Q    Is there any reason why you don't provide a definition of cubby sets in the regulations?

MR. COLE: What regulations is he referring to?

MR. SCORDINO: In the federal regulations. Is there any reason it's not defined?

MR. COLE: I don't this person could speak to that. He's a refuge manager.

THE COURT: Do you have that knowledge?

A    I could speak for my refuge in particular. The reason we do not and we do not require special use permits is biologically, we have a healthy population of fur bearers, and our public use is very low. I am also the sealer for the Galena area. The number of people trapping is so low and the populations that we observe are -- with my biologist -- and my biologist and so forth, the advice they give is that we do not have a population issue right now with fur bearers. In the future, if that were ever to change, would we consider it? Absolutely.

Now, as far as an actual definition for a cubby, again, it goes back to, in my opinion, a cubby is a cubby. Anybody who has trapped for any amount of time is -- any experience, understands what that is. Even my eleven-year-old, who's been trapping with me, knows exactly what a cubby is. He knows how to set up a cubby.

MR. COLE: Objection. Non-responsive, Your Honor.

A    So -- but -- so --

THE COURT: I'll let it stand as part of the answer

to the question asked.  Any other questions?  I have one question for you, sir.  On page thirty-six of Exhibit 4, I believe you indicated that there was a flag there?  I'll ask the question then.  Is there a flag depicted there?

THE WITNESS:  I was not asked -- there is not a flag depicted in that diagram.

THE COURT:  Is there a flag depicted in any of the diagrams that -- that you've offered --

THE WITNESS:  On page --

THE COURT:  -- as pages --

THE WITNESS:  -- forty-six --

MR. COLE:  It's page four.

THE COURT:  Well, my pages are out of sync, but I can see a page forty-six is --

THE WITNESS:  Oh, it's -- it's the -- yeah.

THE COURT:  I -- I see what page forty-six is.  All right.  So, what you have brought into the court that you held up is similar to what's depicted there hanging off the branch.

THE WITNESS:  Yes.

THE COURT:  Is it called a flag anywhere on that page?

THE WITNESS:  It is not.

THE COURT:  Any questions as a result of follow-up or --

MR. SCORDINO:  No, Your Honor.

THE COURT:  You may step down.  Any other evidence by the Government?

MR. SCORDINO:  No, Your Honor.  Thank you.

THE COURT:  Any evidence by the defendant in rebuttal?

MR. COLE:  No.

THE COURT:  Evidence is closed.  If you're prepared to argue the matter, it's the defendant's motion, so I'll let you go first.

**DEFENDANT'S CLOSING ARGUMENT**

MR. COLE:  Thank you, Your Honor.  In our opinion, the evidence that has been elicited today, in both the questions and the answers, clearly demonstrates that everybody has their own kind of idea of what cubby means and what it represents.  I -- I'm struck, as I sit here and listen to the testimony in front of you -- I believe it was Justice Brenna -- Brennan who said pornography is something that you don't -- you can't define, but you know it when you see it.  And we have a little of that going on right here.

The fact is that the Government has brought this criminal action in a case that involves basically a -- a -- a permit.  And as a consequence of bringing a criminal action, when they simply could have just revoked someone's permit for inappropriate action, they've chosen to make this a criminal case with criminal penalties.  And when they take those types

of actions, they're held to high standards, and those high standards are that a person has to be placed on reasonable notice of what it is he or she has done which constitutes a crime.

Now, as we've noted and as the witnesses have agreed to, the term cubby set, which is specifically excluded, and flag set, that term -- those terms together and apart, are nowhere defined. According to the Government, it's just everybody knows what it is. And yet when you look at the diagrams, you will see that everybody's interpretation is a little bit different, and there are many, many variations on what constitutes a cubby set, and that has been clearly demonstrated by the exhibits brought to you by the Government in this case.

The fact is there is no definition under Alaska statutes and there is no definition under Alaska regulations, and if the State of Alaska thought it was important enough to have something like this in their statutes, they could have because most of the trapping is governed by Alaska trapping statutes.

And our position is if the Government wants to make greater -- there's no requirement that people -- as far as I know there's been no testimony that cubby sets have to be removed on a certain date. When the Government makes those as additional conditions on a permit and then seeks to criminally

sanction people for violations, then it should do a better job of determining and setting forth exactly what it is that is a cubby set. That's number one.

We submit to you that this vague notion of, well, it's a tunnel-like something that's got one entrance and it's got bait at the end and it's got a trap somewhere in the middle, somehow everything that even approximates something like that is a cubby set. So, in our estimation, that is so vague and there are so many examples of things that come close to that or don't come close to that, that it is impossible to make a determination, based on the facts in front of you, that people are rightly put on notice of what is prescribed.

If -- if they had come in here and said, look, in 2010 we had an orientation and here's what we presented to everybody, this is what a cubby set is, gentlemen. On February 15th, this -- and here's the definition and we want everybody to be clear -- is what needs to be taken out on that particular day. The Government didn't do that.

They brought in something that we don't know when it was created, we don't know what the trappers were told, we don't know anything about that. We know a dia -- that a Power Point was somewhere created, it was inaccurate, it didn't apply to 2011, and we don't know what was said or what was not said.

Yet the Government would simply say you know it when

you see it and everybody knows what it is, and so everybody should just know. Well, if it's that easy, why didn't they simply create a definition for what it is? Why wouldn't they just do that and make this easier on everybody?

And it -- I can't answer that, but what I can answer is that the Government has failed to demonstrate that it has a recognizable definition in the Kenai refuge. Mr. -- the -- the -- Mr. Moos', I believe, testimony was nice except that he doesn't provide you with anything that helps you in this deliberation. He's a person from North Dakota and Minnesota who's done most of his trapping of very different species, and a person from Galena who's taught elementary kids one class and one class to the State, and really has nothing to provide about what trapping is or how it should be interpreted or defined in the Kenai refuge.

The second thing that has just been glossed over by the Government in their arguments both today and in their written arguments is their wording of the condition. Again, it is the Government that is bringing criminal charges on a permit -- for violation of a permit. Then they have to accurately describe and set out what constitutes a violation, and they use the term cubby set and -- what is it? Flag --

MR. SCORDINO: Flag and cubby.

MR. COLE: Flag set. They used those specific terms. And certainly, the reasonable interpretation is that

"and" is used in the conjunction, meaning you have to have both (indiscernible) are not allowed when the lynx season are closed. The argument that they meant either/or is simply resolved by saying if that's what you meant, then that's how you should have written it; cubby or flag sets are not allowed when the lynx season is closed. That would distinguish and say that both -- but when you use "and," it means they are being used together, and there's no evidence that a flag set was used in this particular occasion by Mr. Crawford.

So, the Government's arguments to the contrary, there's only one reasonable reading of that condition. Thank you.

THE COURT: Government's summary?

**GOVERNMENT'S CLOSING ARGUMENT**

MR. SCORDINO: Yes, Your Honor. To address the wording first, as defendant has noted, it uses the word "and"; as he's not noted, it says "sets." If it was a flag and cubby set is prohibited, it would say a flag and cubby set. This is two types of sets, that's why it's a flag and cubby sets; it's a plural. The conjunction is to say that these two types, flags and cubbies -- flag sets and cubby sets are prohibited.

Now, this meets the purpose that the refuge put towards this condition. The purpose was to protect lynx. This purpose is clear in the -- the condition as it only applies when lynx are not in -- in the trapping season.

As you heard from the witnesses, both flag sets and cubby sets on their own are used to get lynx. To protect the lynx population, a very important function of the Kenai National Wildlife Refuge, they have disallowed flag and cubby sets, both types of sets, from being used outside of the lynx season.

Now, these definitions, flag and cubby sets, they -- granted, they don't have a definition in the regulations or in the permit, but it's because it is meant -- it is used for a group of people who have a specialized knowledge; trappers. The only person that is ever going to ask for a trapping permit is a trapper.

Now, when you're looking at whether a statute is unconstitutional and vague, you have to look to -- the general is when you -- when evaluating whether a particular statute is vague, the Court looks to the common understanding of its terms.

Now, however, if the statutory provision -- prohibition involves conduct of a select group of persons having specialized knowledge -- in this case, that would be trappers -- trappers have knowledge about different type of sets I have no idea about. I've been having to learn for the last two or three weeks about flag sets, cubby sets, how a cubby is a tunnel with the hole in the back -- with the bait on the back side and the trap near the front. I had no idea

what it was until this point because I'm not a trapper. I'm not a person who would get a trapping permit. I didn't ask for that privilege. This is a privilege, not a right on the -- in the refuge. Now, in the -- the -- the challenged phraseology is indigenous to the idiom of that class, the people who are going to be using this phraseology of a cubby set and a flag set are only trappers.

As you've heard from the testimony, the -- these have a clear definition. As the defendant even addressed in his -- in his closing here, in his argument, he -- he even accepted it. It is a tunnel with the trap in the front and bait in the back. And he said, well, that could include all types of things, and that is correct. All of them are prohibited. They're prohibited because those are types of traps that could go after lynx, and lynx are protected during that time. This is the purpose of the statute.

Now, when a statute involves language that goes to a select group of persons having specialized knowledge and the challenged phraseology is indigenous to that class, the standard is lowered for -- and the Court may uphold the statute which uses words or phrases having a technical or special meaning well enough known to be -- to enable those within its reach to correctly apply them.

The people within the reach of this permit are only people who asked for this special privilege of being on a

national wildlife refuge trapping.  If they did not ask for this -- this permit, they could not do it.  And so, it was incumbent upon them, if they didn't understand it, to gain that knowledge.  They had a whole class to get this knowledge.

You've seen a -- a slide that was the general type that was used in those classes.  I can't say it was for this specific year, but this was the type of knowledge that was given to them.  It explained this is -- you know, he gave them a diagram, this is what a cubby set looks like.

Now, it's also important to note that under the rule of lenity, which is basically what he's arguing, the Court has rejected the contention that the rule of lenity is invoked merely because a different reading of the statute is possible:

"Because the meaning of language is inherently contextual, the Supreme Court has declined to deem a statute ambiguous for the purpose of lenity merely because it was possible to articulate a construction more narrow than that urged by the government."

We're not urging a narrow construction.  We're telling you anything that has a tunnel, bait in the back, trap in the front, that is a cubby.  We're not making it -- and we're not suggesting a narrow definition.

"Instead, the court has only reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope, even

after resort to the language and structure, legislative history, and motivating policies in the statute."

As we've seen, the motivating policy of the statute was to protect lynx. It's actually clear right in the condition itself that this is the motivating policy because it only applies when lynx are not in season.

Since those types of traps, flag sets and trap -- and cubby sets, on their own can impact the -- can impact lynx. That's why they're being protected, why these activities are being prohibited. Based on that, the rule of lenity should not apply. A trapper -- not me, but a trapper knows what conduct is not allowed by Special Condition Number 7.

And more generally, you know, this is only to one part of a three-part -- even if the Court does find that this part -- this Special Condition Number 7 is vague, it doesn't dismiss the actual charge. The charge is he violated the conditions of his permit; the conditions of his permit he violated in three different ways. If this part is found vague, there's still two other conditions of his permit that are in no way vague and -- nor have they been argued that they're vague, that he violated. As such, this would not dismiss charge two if the Court finds that -- finds that this condition is vague. Thank you, Your Honor.

MR. COLE: Can I just have two minutes, Your Honor?

THE COURT: Yes. Go ahead.

### DEFENDANT'S REBUTTAL ARGUMENT

MR. COLE: I think counsel's argument goes to the heart of our case, and that is that the Government seeks to have the widest definition of what constitutes a cubby set, making everything that even approximates this unlawful and requiring criminal penalties. And that -- when the Government seeks to go beyond and have such a wide definition, then it's incumbent upon it to clearly set forth what those unlawful acts are, and the Government has not done that.

If you listen to the testimony of the people, what did they say? They didn't testify that anybody ever said anything about what a cubby set is. What they testified to is, oh, there's lots of resources out there that you can go and figure it out.

Counsel for the Government admits this is not something that is readily known. You have to go out and learn it. Well, on -- according to whose book? Is it the Minnesota version that we're going to talk to? Is it the Canadian version? Is it the -- is it the experiences of North Dakota trappers? We -- nobody knows. And the Government could easily have rectified this by simply setting forth what it is that constitutes illegal activity if that is what their goal is. If that is what they want, is to have criminal sanctions

on violation of conditions like this, then make it specific and narrow and define it. If you want to define it broadly, that's fine, but that is the danger in this, is that every trap that has bait on it or is a bait-attracting is a cubby trap -- a cubby set, and that is what makes this unconstitutional. Thank you.

THE COURT: The motion to dismiss is not dispositive of a case. I will put out a decision on it. It's the end of the day here, so I'll not stop and wing it, but put something out in writing. We still have the same trial date. I recall that in the pretrial hearing, I may have indicated earlier about filing a statement of the elements of the offense, and we have two counts. I think the counts are -- one of them is a little different because it has three theories for violating the permit.

I'd like to expedite the statement of the elements of proof. I wonder if you could have that by next Tuesday? I don't see any reason why you couldn't file that with the Court, your statement of the elements of proof for the two counts. This is not a jury trial, but it's important, I think, for us to be focusing on the elements of proof in preparation, and so I'll make that ruling here today. And let me ask the Clerk, is Exhibit 4 in evidence?

THE CLERK: It's not admitted yet.

THE COURT: I think we've discussed this matter as

if Exhibit 4 were in. We added a page to it. So, let's just go ahead and admit Exhibit 4 so it'll be part of the record. I have copies of the exhibits. I believe everyone else does, too, so you don't need to have anybody preserve. They're basically copies of documents, there's nothing original there that I see that we're concerned with preserving. Anything else for the record?

(Government's Exhibit 4 previously admitted)

THE CLERK: Are we vacating the trial in the PO cases?

THE COURT: The PO cases were superseded by this Information, and they should be closed.

THE CLERK: Thank you.

THE COURT: So, everything set there -- it's -- those are closed matters. The motion to dismiss probably carried over from that, but we've litigated that as Document 3 or whatever it is here in this case. Mr. Cole, anything else?

MR. COLE: No, Your Honor.

THE COURT: Mr. Crawford, you still with us?

THE DEFENDANT: Yes, sir. I am. I had trouble hearing the last couple of paragraphs you were reading there, what you were saying.

THE COURT: Okay. Basically, I've indicated that the matter is still on track for trial. This motion will not dispose of it regardless of its outcome, and even if I rule in

favor of the defendant or the Government, there's no interlocutory appeal from it, so we'll go ahead with the trial date, and I've asked for the elements of proof to be filed by close of business next Tuesday.  So, counsel have that time limit and Mr. Crawford can talk to his attorney about that. That'll conclude this proceeding here today.

MR. COLE:  Thank you, Your Honor.

THE COURT:  Good day.

THE CLERK:  All rise.  This Court is now adjourned subject to call.

(Proceedings concluded at 4:48 p.m.)

**INDEX**

| | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| WITNESSES FOR THE GOVERNMENT: | | | | | |
| Gary Joe Titus | 14 | 33 | 53 | 60 | |
| Kenton Moos | 61 | 88 | 94 | | |

| EXHIBITS: | | Marked | Received |
|---|---|---|---|
| GOVERNMENT: | | | |
| 1 | Crawford trapping permit | | 18 |
| 2 | Power Point slide | | 22 |
| 3 | "Alaska Trapper's Manual" excerpts | | 26 |
| 4 | "Yukon-Kuskokwim Region Trapper's Handbook" excerpts | | 64 |

| | Page |
|---|---|
| DEFENDANT'S CLOSING ARGUMENT: Mr. Cole | 97 |
| GOVERNMENT'S CLOSING ARGUMENT: Mr. Scordino | 101 |
| DEFENDANT'S REBUTTAL ARGUMENT: Mr. Cole | 106 |

**CERTIFICATE**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ D. Kathleen Stegmiller                    01/06/2012
D. Kathleen Stegmiller, Transcriber                Date