**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| |
|---|
| UNITED STATES OF AMERICA |
| Plaintiff, |
| vs. |
| MICHAEL B. CRAWFORD, |
| Defendant. |

3:11-cr-105-JDR

<u>**MEMORANDUM OPINION**</u>
<u>**Trial by Court**</u>

This case was tried to the court on a two count Information charging Michael Crawford with attempting to trap wolverine out of season (Count 1) and violating the terms and conditions of his permit (Count 2). For reasons discussed below the court finds the defendant guilty as charged in Count 1 and guilty under the first alternative charged in Count 2. Count 1 alleges that:

> On or about March 1, 2011, within the District of Alaska, within an Alaska National Wildlife Refuge, in the Mystery Creek road system within the boundaries of the Kenai National Wildlife Refuge, Game Management Unit 15, the

defendant, MICHAEL BYERS CRAWFORD, did attempt to trap wolverine after the wolverine trapping season closed on the last day of February 2011.  All of which is in violation of 16 U.S.C. § 668dd, 50 C.F.R. § 36.32(c)(1)(i), 5 AAC 84.270(14).

Count 2 alleges that:

On or about March 1, 2011, within the District of Alaska, in the Mystery Creek road system within the boundaries of the Kenai National Wildlife Refuge, the defendant, MICHAEL BYERS CRAWFORD, did not abide by the terms of his National Wildlife Trapping permit, Permit Number KENll-T23, by attempting to trap wolverine out of season in violation of Special Condition number 1 of his permit, failing to make every effort to prevent the capture of non-target species in violation of Special Condition number 6 of his permit, and operating a cubby set after the lynx season closed on February 15, 2011 in violation of Special Condition Specific to the Kenai National Wildlife Refuge number 7 of his permit.  All of which is in violation of 16 U.S.C. § 668dd, 50 C.F.R. § 26.22(b).

## Findings of Fact

The Special Use Application and Permit issued to Crawford on November 6, 2010 contains ten special conditions, eights special conditions specific to the Kenai National Wildlife Refuge, and four special conditions for beaver trapping on the Kenai National Wildlife Refuge.  These permit conditions are set forth in the discussion *infra* at p.15.

On March 1, 2011, while traveling on a snowmobile in the Kenai National Wildlife Refuge, Refuge Officer Gary Joe Titus observed foot prints leading to a stream bed. He parked his snowmobile and following the tracks to what he describes as a cubby set, erected into the bank with a 330 Conibear trap at the entrance of a tunnel leading to a piece of salmon. The tunnel was about 24 inches long. Cut green branches covered the tunnel and there were twigs on top. A larger stick held the Conibear trap in place. Officer Titus detected no smell near the cubby set. According to Officer Titus this trap set was commonly used to catch lynx and wolverine. It had no flag or attractor on it. This trap set is designated as Trap No. 1. According to Crawford, Trap No. 1 used tainted salmon heads for bait together with "gusto" (a commercially based skunk scent lure), and beaver castor. This bait and scent would attract a wolverine or other predators. The hole went underneath the log at one end with space underneath the log leading to an area where the bait was located. There was more than one way in or out to this.

The officer concluded that because the trap could catch a wolverine it should have been removed on the day wolverine season closed even if the trap could legally catch other animals. The trapping seasons for wolf, coyote and beaver were still open at the close of the season for wolverine. On March 1, 2011, the trapping season was not open for lynx or wolverine. Titus had never seen this type of set used for wolves or coyote. Though a Conibear 330 could catch a coyote, Titus

stated it would be better to use a 220 or a 280.    A smaller trap would have been used to trap marten or mink.  The 330 Conibears were very commonly used for a lynx set or a wolverine set.

When Officer Titus traveled about another 30 minutes down the trail he observed more foot prints in the snow.  He discovered another 330 trap set at the entrance to a tunnel which was about 18 inches long.  This tunnel led to a natural hole in the back.  Branches were used to form the sides and top of the tunnel.  There was no flag and a piece of fish was located in the back of the tunnel.  Officer Titus did not smell anything at the trap set at trial but he readily admitted at trial that his sense of smell was not good.  This trap set is designated as Trap No. 2.

Both trap sets had tags with the name of Crawford on them.  The Refuge Officer's registry indicated that Michael Crawford and Scott Judah were trapping in 2010-11 season as partners using traps with the name Crawford on them.

In order to hold or use a permit for trapping in the Kenai Refuge the trapper needs a current State Trapping License and must attend a three and one half hour orientation class offered by U.S. Fish and Wildlife Service at the Refuge headquarters.  The trapping permit for the Refuge is free.

In Game Unit 15, where the traps were set, lynx season closed February 15, 2011.  Pursuant to Special Condition No. 7 of the Permit "cubby and

flag sets" are not allowed when lynx season is closed.   In the opinion of Officer Titus, a person using a cubby and flag set after February 15 would violate Permit Conditions 6 and 7 because this type of set is used to trap lynx.  Official records showed that in the past three years with more than 300,000 trappers registered, only four wolves had been taken from over two million acres of land in the Refuge. Crawford used snares and leg hold traps for wolves.  A Conibear 330 is not a typical wolf trap.

Michael Crawford obtained his first trapping license in 2003 or 2004. He is a life member of the Alaska Trapper's Association and past president of the Kenai Peninsula Trapper's Association.  He sat on the Kenai Soldotna Fish and Game Advisory Commission and served as chairman of it for four and one half years.  He has been a board member and president of Alaska's Kenai Peninsula Chapter of the Safari's Club International. Crawford taught a portion of the orientation class on the Kenai Refuge for two years.

Crawford started trapping in 2010 on December 1, when the Refuge opened up to snowmobiling.  He knew that he needed to remove his flag and cubby sets by February 15, the last day of lynx trapping season.  He was aware of the requirements of the Special Permit.

On February 28, 2011, he and Scott Judah had four trap sets out.  They intended to remove them before the wolverine season closed because the sets

potentially could catch a wolverine.  Crawford thought that if a wolverine came down the creek it would likely go into one of his sets.  Judah was called out of town the end of February 2011 and he was unable to remove the sets before Officer Titus located them.

The parties disagree over the definition of a cubby and flag set.  A cubby set has been a frequent topic of discussion at annual trapping meetings on the Kenai Peninsula.  At some of the meetings of the Trappers Association, Officer Titus was called upon to explain the use of cubbies. According to Titus' testimony, the cubby set prohibition against trapping is specific to this particular Refuge.

Officer Titus stated that a cubby set in this particular refuge targets only lynx or wolverine.  In his opinion a cubby does not need a flag.  He referred to pictures of cubbies in magazines and journals but admitted there was no clear definition of cubby.  At one point in his testimony Officer Titus called any type of hole whether natural or covered, a cubby.  According to Officer Titus a cubby has a trap at an entrance that forms a tunnel with one way in and one way out.  It can vary in size or depth.  Officer Titus testified that using a newspaper container with the ends cut off and a Conibear trap in front pushed into a bank would qualify as a cubby and thus be precluded even though a lynx could not squeeze into it.  The Officer acknowledged that he has seen cubby sets, flag sets, and cubby sets with some type of attractor.  The Officer considers it a violation when a trap is set for a certain

type of animal out of season regardless of the trapper's intent. Alaska State law does not prohibit cubby sets and/or flag sets after the close of lynx season.

Ted Spraker testified as an expert trapper for the defense. Mr. Spraker worked for the Alaska Department of Fish and Game for almost 30 years and is a retired wildlife biologist. As a management biologist for the State he conducted surveys on all big game species, furbearers and small game. He is currently serving his fourth term on the Alaska Board of Game. He has trapped the Kenai National Wildlife Refuge almost every year since 1978 and is a long standing member of the Alaska Trappers Association. He admitted that he had no clear understanding of what constitutes a cubby set.

Mr. Spraker stated that the use of a flag or attractor with a cubby is considered a lynx cubby set. According to Spraker a cubby set is almost always associated with catching lynx and if one were going to trap for lynx he would use an attractor such as a wing or piece of ribbon or a CD to attract their attention. Lynx are generally not attracted to bait that gives off an aroma. They are highly skilled predators who prefer snow shoe hares, ptarmigan or grouse. If the set does not have a wing or CD disk, for example, in front of it Spraker would call it a pocket set not a cubby.

If one traps an animal when the season is closed, according to Officer Titus, the trapper has to turn the animal into the Refuge. Officer Titus has never

charged anyone with a criminal offense under those circumstances. He testified that he has never heard of anybody turning in an incidently caught furbearer that was out of season.

In a recorded interview on March 8, 2011, Officer Titus queried Crawford about the four 330 traps. Crawford acknowledged that the traps in question were his. He told the Officer that he did not think his sets were cubby sets. He stated that he had two cubbies in a different area during the lynx season. He described how he made those sets which he called pocket sets. Officer Titus told him that his sets for both Trap No. 1 and Trap No. 2 such formed a cubby which the officer described as any type of hole, natural or covered, that could possibly attract a lynx. Crawford responded that if you are going to call this a cubby we need a better definition of a cubby.

During the interview Crawford stated he intended to remove the traps before they were seized. Crawford stated that Judah was going to pull the two traps on Sunday, February 27; but Judah forgot to pull them. He said that Judah was going to go back Monday, February 28, but he got called out of town for work.

Crawford told Officer Titus that he thought the traps were legal for wolves, coyotes and rabbits. The only animals he caught were two rabbits. Crawford stated "I was worried about catching a wolverine on the last day and having an incidental catch issue." For that reason he was going to pull the traps

because "most likely a [wolverine] would have been something that would have been caught there." Exhibit 10, Recorded Interview of Mike Crawford, p.4.

Crawford calls his sets for Traps No. 1 and 2 "pocket sets" referring to a hole in the bank of a creek with the trap in front of the bait. Such a trap is commonly used for mink. Lynx don't like closed spaces and according to Officer Titus are unlikely to be trapped in a pocket set. The two traps were baited for wolverine using smelly bait. Crawford took no special steps to avoid the capture of a wolverine after wolverine season closed. Mr. Spraker stated that trap No. 1 would be a good set for wolverine and one might also expect to catch a hungry coyote.

Crawford intended to trap a wolverine using the two traps in question. He stated that he had been told by other persons to use a Conibear in the creeks because that's where wolverines were caught in the past.

## Discussion

### A. Attempting to Trap Wolverine in violation of federal or state law

#### 1. Applicable Law

The first count, charging attempting to trap out of season, cites three legal sources. The first is 16 U.S.C. § 668dd. This is the catch-all general provision governing the National Wildlife Refuge system. Subsection (a) governs refuge lands in Alaska. Subsection (f) addresses penalties.

The second source is Title 50 of the Code of Federal Regulations, "Wildlife and Fisheries." Subchapter C governs "The National Wildlife Refuges." 50 C.F.R., Subpart D, includes 36.32 the "Taking of Fish and Wildlife" and states:

> The following provision shall apply to any person while engaged in the taking of fish and wildlife within an Alaska National Wildlife Refuge:
>
> (1) Trapping and sport hunting.
> (i) Each person shall secure and possess all required State licenses and shall comply with the applicable provisions of State law unless further restricted by Federal law;
> (ii) Each person shall comply with the applicable provisions of Federal law;
> (iii) In addition to the requirements of paragraphs (a) and (b) of this section, each person shall continue to secure a trapping permit from the appropriate Refuge Manager prior to trapping on the Kenai . . . Refuge [ ].

50 C.F.R. 26.22 gives general exceptions for entry and (b) states:

> (b) A permit shall be required for any person entering a national wildlife refuge, unless otherwise provided under the provisions of subchapter C. The permittee will abide by all the terms and conditions set forth in the permit.

50 C.F.R. 28.31 is entitled "General Penalty Provisions" and applies to "any person who violates any of the provisions, rules, regulation, posted signs, or special regulations of this subchapter C . . . ." *See* 50 C.F.R. 28.31(a). Both 36.32 and 26.22 fall under Subchapter C. Section 28.31(b) states:

(b) Failure of any person, utilizing the resources of any national wildlife refuge or enjoying any privilege of use thereon for any purpose whatsoever, to comply with any of the provisions, conditions, restrictions, or requirements of this subchapter C or to comply with any applicable provisions of Federal or State law may render such person liable to:

> (1) The penalties as prescribed by law. ( Sec. 4, 76 Stat. 654, **16 U.S.C. 460k-3**; Sec. 4, 80 Stat. 927, as amended, 16 U.S.C. 668dd(e); Sec. 7, 60 Stat. 1080, 16 U.S.C. 666a; Sec. 6, 40 Stat. 756, as amended, 16 U.S.C. 707; Sec. 7, 48 Stat. 452, 16 U.S.C. 718g; Sec. 2, 33 Stat. 614, as amended, 18 U.S.C. 41.).  (Emphasis added).

The cited U.S. Code Section bolded above (16 U.S.C. § 460K-3) contains the following language:

> The Secretary may establish reasonable charges and fees and issue permits for public use of national wildlife refuges, game ranges, national fish hatcheries, and other conservation areas administered by the Department of the Interior for fish and wildlife purposes. The Secretary may issue regulations to carry out the purposes of this subchapter. **A violation of such regulations shall be a misdemeanor with maximum penalties of imprisonment for not more than six months, or a fine of not more than $500, or both.** The provisions of this subchapter and any such regulation shall be enforced by any officer or employee of the United States Fish and Wildlife Service designated by the Secretary of the Interior.  (Emphasis added).

Section 668 (f) states:

> "(1) **Knowing violations**  Any person who knowingly violates or fails to comply with any of the provisions of this Act or any regulations issued thereunder shall be fined

under title 18 or imprisoned for not more than 1 year, or both. (2) **Other violations** Any person who otherwise violates or fails to comply with any of the provisions of this Act (including a regulation issued under the Act) shall be fined under Title 18 or imprisoned not more than 180 days, or both."

The third legal source referenced in Count 1, 5 A.A.C. 84.270(14), gives the trapping seasons for legally hunting furbearers including wolverine in the different game units in Alaska.

Count 1 alleges that Crawford attempted to trap wolverine outside of the trapping season in Game Management Unit 15. AS 16.05.255 provides in pertinent part:

"(a) The Board of Game may adopt regulations it considers advisable in accordance with AS 44.62 (Administrative Procedure Act) for . . . (2) establishing open and closed seasons and areas for the taking of game. The Alaska Administrative Code (AAC) states that the time frame for legal wolverine trapping in 2010-11 is November 10 through February 28. Crawford is alleged to have attempted to trap wolverine on March 1, 2011."

Under Alaska law "trapping" is defined as "[t]he taking of mammals declared by regulation to be furbearers." AS 16.05.940(36). "Take" is defined as "taking . . . trapping . . . or attempting to take . . . trap, or any manner capture or kill . . . game." AS 16.05.940(34).

Trapping seasons and bag limits for furbearers are established in 5 AAC 84.270. Subsection 270(14) set the season for wolverines in Game Unit 15 to run

from November 10 - February 28 with no bag limit. That regulation is made applicable in 5 AAC 84.260 which provides: "It is lawful to trap a furbearer only in a game management unit or a portion of a unit open to trapping in accordance with the open season and bag limit prescribed in 5 AAC 84.270. Bag limits and open seasons are based upon the regulatory year." 5 AAC 84.270. Thus, trapping a furbearer out of season in Game Unit 15 is unlawful under Alaska law.

### 2.    Application of law

Crawford with the help of his trapping partner Scott Judah, attempted to trap fur bearing animals within the Refuge by setting the two traps seized by Officer Titus on March 1, 2011, in the Mystery Creek Road System within the boundaries of the Kenai National Wildlife Refuge, Game Management Unit 15. The traps were set to catch wolverine or any other furbearer in season.

Trap No. 2 was a cubby set. Cubbies are used to catch wolverines. Trapping for wolverine in this area with a permit during the open season is not prohibited by the law. Trap No. 1 and No. 2 were set before the wolverine trapping season had closed.

To "attempt" an offense means wilfully to do some act, in an effort to bring about or accomplish something the law forbids to be done. Devitt and Blackmore Jury Instructions, Section 14.21. A conviction for an attempt requires

proof of both "culpable intent" and "conduct constituting a substantial step toward commission of the crime that is in pursuit of that intent." <u>United States v. Buffington</u>, 815 F.2d 1292, 1301 (9th Cir. 1987); <u>United States v. Snell</u>, 627 F.2d 186, 187 (9th Cir. 1980), <u>cert</u>. <u>denied</u> 450 U.S. 957 (1981). The evidence establishes the existence of both elements. A "substantial step" is "conduct strongly corroborative of the firmness of the defendant's criminal intent." <u>Id.</u> "Culpable intent" can be inferred from a particular defendant's conduct and from the surrounding circumstances. <u>Buffington</u> at 1302.

Crawford clearly intended the trap sets to attract a wolverine regardless of whether the settings constituted a cubby as argued by the government. Even though the season was still open to trap a coyote, beaver or wolf, the traps were clearly set to catch a wolverine. As Crawford recognized, when confronted by Officer Titus, the most effective way to avoid trapping a wolverine after February 28, 2010 when the season closed was to remove the trap. He did not do this timely.

Crawford knew that the traps were not going to be removed by his trapping partner before wolverine season closed. He knew that the traps were set to attract and catch a wolverine. By leaving the traps in place after February 28, 2011, he negligently engaged in trapping wolverine out of season in violation of Alaska State law. Proof that Crawford knew the traps remained set after the close of the wolverine season for Game Unit 15, satisfies the mens rea element

under § 668dd(f)(2).[1] Crawford failed to comply with applicable State law in violation of 50 C.F.R. 26.22(b) and 28.31(b).  *See* Orr-Hickey v. State 973.P.2d 612 (Ak. App. 1999) (hunting sheep in a closed area) citing State v. Rice, 626 P.2d 104, 110 (Alaska 1981) (civil negligence is the culpable mental state that governs hunting offenses under Alaska State law).

**Violations of Special Use Permit**

Count 2 of the Information charges that Crawford violated his trapping permit, Permit No. KEN11-T23 by violating Special Condition numbers 1 and 6, and Special Condition specific to the Refuge, number 7.

Title 50 C.F.R. § 26.22(b) entitled "General exception for entry," covers exceptions for entry in a National Wildlife Refuge (of which the Kenai Refuge is a part).  The relevant portion of § 26.22 is as follows:

> (b) a permit shall be required for any person entering the National Wildlife Refuge, unless otherwise provided under the provisions of subchapter C.  The permittee will abide by all the terms and conditions set forth in the Permit.

**A.  Special Condition No. 1**

Crawford is accused of violating Special Condition No. 1 of his Special use Permit by "attempting to trap wolverine out of season."  Special Condition No. 1,

---

[1] The government argues that the offenses charged invoke a strict liability and there is no other culpable mental state required.  Under the evidence presented the government has proved criminal negligence.

(State and Federal Requirements) reads: "Trapping will be done in compliance with State game laws and regulations, and may be further restricted by general and special conditions of the Refuge Trapping Permit. Permittees will also comply with all other regulations and conditions affecting access to and use of the Kenai National Wildlife Refuge."

Trapping out of season violates Alaska State law. 5 AAC 84.260. For the reasons stated above, attempting to trap wolverine out of season violates Alaska State law and Special Condition No. 1 of Crawford's Special Use Permit.

### B.      Special Condition No. 6.

The second means by which Crawford is alleged to have violated his trapping permit in Count 2 is by failing to make every effort to prevent the capture of non-target species in violation of Special Condition No. 6 of his Permit. That condition reads: "Every effort will be made to prevent the capture of non-target species. However, if an unauthorized animal is found alive and in satisfactory condition in a trap, it shall be immediately released. Non-target species found dead or seriously injured in a trap shall be immediately reported to the refuge manager."

"Non-target species" is not defined in the Permit. The mandatory orientation seminar may have addressed this permit requirement but neither the special use permit itself or the evidence identifies the meaning of "non-target species." "Target" is defined in the dictionary as a desired goal. The American

Heritage College Dictionary, Third Edition 1993. It is used in Condition No. 7 as an adjective for a species. The word "unauthorized" is defined as "not authorized or not permitted." American Heritage College Dictionary.

The literal language of Special Condition No. 6 comports with the government's position that a non-target species includes a fur bearing animal which cannot legally be trapped and retained when the season for trapping that animal is closed. In the context of Special Condition No. 6 the language suggests that non-target species is used synonymously with "unauthorized animal." Crawford argues that this condition was intended to address the incidental trapping of birds, moose, dogs or other animals not intended to be captured.

The term "non-target species" also appears in Special Condition No. 2 providing that trappers who have attended a seminar on the use of snares and who use only snares which have been modified to allow "break away" for larger non-target species on their trap lines are required to check snares once every seven days in the Refuge. (emphasis added) The use of the words "non-target species" in Special Condition No. 2 is consistent with the Defendant's argument that it refers to animals that are not normally trapped and does not include fur bearing animals that may otherwise be trapped in open season. If the Defendant's interpretation of this condition is correct then the evidence fails to show that he has violated Permit

Condition No. 6, requiring him to make every effort to prevent the capture of non-target species.

The government argues that when the season closed for a particular animal that animal became a non-target species. This interpretation seems redundant because the permit elsewhere requires compliance with State game laws and regulations. State law requires compliance with regulations setting closed seasons.

Special Condition No. 6 also provides that the trapper should seek to avoid capturing the non-target species but if one is captured then the animal should either be immediately released or if it is dead or seriously injured in a trap then it must be reported to the Refuge manager. The government's view that non-target species referenced in this permit condition includes fur bearing animals that are captured after the close of season is problematic because the Refuge manager would probably want to know if such animal is found in the trap even if it is released. Yet, the government's view allows the trapper to immediately release the unauthorized animal if it is in satisfactory condition without reporting it to the Refuge manager. If the drafters of the permit had intended to require a permittee to make every effort to prevent the capture of a fur bearing animal after the season for that animal has closed it could have so stated in clear language in the special conditions. However, this would be redundant in part to Special Condition No. 1 in the Permit.

Only Special Condition No. 6 addresses the catching of unwanted species. Nowhere else in the Permit is the capture of unwanted species directly addressed. In the absence of evidence to the contrary the court concludes that Special Condition No. 6 is intended to promote trapping methods that will reduce the possibility of catching domestic animals and unwanted species such as birds, dogs and moose. The Refuge is used by non-trappers for recreation. Whether Special Condition No. 6 is also intended to address catching fur bearers after the season has closed is speculative.

To avoid avian predators like crows, jays, eagles and magpies, the regulations state that traps and snares must be set at least 30 feet away from any exposed bait. The evidence indicates that exposed bait near a trap attracts birds including eagles. Bait placed in a cubby for example, should be covered to prevent the attraction of birds. Special Condition No. 6 addresses trap methods, not trapping in a closed season. Permit Condition No. 7 requires the permittee to report on trap takes of both target and non-target species. If Special Condition No. 6 were intended to include the latter, as the government argues, that condition should have been made more explicit.

### C.  Special Condition No. 7

The third theory for violating his trapping permit (alleged in Count 2) is that Crawford operated a cubby set after the lynx season closed on

February 15, 2011 in violation of Special Condition specific to the Kenai National Wildlife Refuge No. 7 of his Permit. Special Condition No. 7 reads: "Cubby and flag sets are not allowed when the lynx season is closed."

Lynx season for the Refuge closed February 15, 2011. The parties disagree as to the definition of a cubby set and whether Crawford had a trap set up after the close of lynx season that is prohibited by Special Condition No. 7. Refuge Officer Titus interprets Special Condition No. 7 to prohibit a cubby set, a flag set, and a cubby and flag set.

Cubby sets are used to catch a variety of furbearers. "The main idea behind a cubby is to make a structure that will guide the animal into an area where you have placed bait and lure. The cubby provides cover for the trap and bait as well." Alaska Trappers Manual, Exhibit 3, p.61. The Alaska Trapper's Manual suggests using the 330 Conibear style trap for lynx or wolverine and recommends a different size for marten. *Id.* at 61.

Considering the evidence adduced at trial the ambiguity of the language in Condition No. 7 becomes apparent. There appears to be a wide disparity among the trapping community and the wildlife officers as to what constitutes a cubby set. The defendant's expert, Ted Spraker, acknowledged that you can have a cubby set without a flag. You may have a flag set without the use of a cubby. Or, a trapper may use a cubby and flag set to trap furbearing animals.

It is undisputed that Condition No. 7 is intended to protect the lynx population.  Thus, use of a "cubby and flag set" on the Kenai National Wildlife Refuge is conditioned upon whether the lynx season is closed.  In this case the lynx season closed February 15, 2011.  The basic description of a cubby addresses the structure of the tunnel or cave like inclosure designed to lead the animal past a trap to reach bait.

The government conceded in its summation that trap no. 1 displayed in Exhibits 1 - 3, did not constitute a cubby because the setting had a second tunnel under a log by which an animal could enter and retreat without passing by or through the (conibear) trap.  The second trap discovered by Officer Titus arguably met the definition of a cubby set.  Crawford maintains that it was not a cubby because light could come through the branches.  The illustrations and the materials admitted at trial as exhibits show a simpler structure as a cubby.

The reference to "cubby and flag sets" in Special Condition No. 7, however, is ambiguous with respect to the meaning of those words.  This Special Condition is unconstitutional because its language is so vague as to whether a cubby without a flag is prohibited that it permits arbitrary enforcement. As the defendant's expert explained, prohibited use of a cubby set for the entire year when lynx season is closed would preclude significant trapping in that area for other fur bearing animals.

A lynx hunts primarily by vision which is why trappers place an attractor or a flag at a trap site to attract the attention of the lynx.  Crawford's second trap did not have a flag or an attractor.  Moreover, the evidence indicates that scents had been placed at the trap to attract a wolverine.

If the phrase "cubby and flag set(s)" is read as a single requirement then Crawford's second trap did not fall within the prohibition of Condition No. 7, because there was no flag.  If Condition No. 7 was meant to protect only Lynx it could have specified that "cubby and flag sets or flag sets" are not allowed after the close of lynx season.  If the condition was meant to prohibit the use of a cubby for any furbearer after the close of lynx season it could have so stated, for example:  Use of a cubby set with or without a flag is not allowed when the lynx season is closed.

The meaning of "cubby and flag sets" has been debated frequently at recent annual trappers association meetings in Kenai, Alaska attended by the Refuge officer.  Officer Titus agreed in his recorded interview with Crawford that the phrase needs to be clarified.  As the language exists now it is subject to vagueness because it allows persons, including law enforcement officers, trappers, and orientation instructors to construe the language differently.   A statute is unconstitutionally vague as applied if it does not provide the defendant adequate notice of what conduct is prohibited.  Rojas-Garcia v. Ashcroft, 339 F.3d 814, 822 (9th Cir. 2003).  This constitutional principle applies with equal force to the language

of a permit where the government seeks criminal enforcement of proscribed conduct in that permit. A statute is void for vagueness if it "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement." <u>United States v. Ayala</u> 35 F.3d 423, 424-25 (9th Cir. 1994).

For purposes of criminal enforcement the language "cubby and flag set" in Condition No. 7 is too vague to pass constitutional muster under a void-for-vagueness challenge. The language is too indefinite to prohibit a cubby without a flag after lynx season. Wherefore, the court concludes that the government has failed to prove beyond a reasonable doubt that Mr. Crawford violated Specific Condition No. 7 of his Permit.

## Summary

The government has met its burden of proving beyond a reasonable doubt that Crawford attempted to trap wolverine after the wolverine trapping season had closed as charged in Count 1 of the Information. Because the government has met its burden of proof as to a violation of Special Condition Number 1, the defendant is guilty under Count 2.

The discussion of the two other conditions of the permit at issue constitutes dicta. This opinion suggests that Special Condition No. 6, and Special Condition specific to the Kenai National Wildlife Refuge No. 7, should be drafted

more explicitly to set forth the trapper's responsibility and state what conduct is prohibited.

The government clearly has the authority to regulate trapping in the Kenai National Wildlife Refuge by imposing restrictions different from those in other National Refuges. This opinion does not address the propriety of limiting the use of a cubby set on the Refuge. This is the responsibility for the Refuge management and not this court. Under separate cover a date and time will issue for imposition of sentence.

DATED this 23rd day of March, 2012, at Anchorage, Alaska.


_/s/ John D. Roberts_____
JOHN D. ROBERTS
United States Magistrate Judge